**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MICHAEL LASALVIA on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL R. WASENDORF, SR., RUSSELL R. WASENDORF, JR., BRENDA L. CUYPERS and SUSAN MARY O'MEARA,<br><br>Defendants | Case No. |

**CLASS ACTION COMPLAINT**

Plaintiff Michael LaSalvia ("Plaintiff"), on behalf of himself and of all others similarly situated, by their undersigned attorneys, for his Complaint against the above-named defendants ("Defendants"), upon knowledge as to matters relating to themselves and upon information and belief as to all other matters, allege as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 7 U.S.C. § 1 et seq.  Venue is proper under 28 U.S.C. § 1391(a) and (b) and 7 U.S.C. § 25( c), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## SIGNIFICANT NONPARTY

2. Significant nonparty Peregrine Financial Group, Inc. ("PFG") is a financial derivatives broker. PFG's headquarters is located in this District at 311 South Monroe Street, Suite 1300 Chicago, IL. PFG was registered as a futures commission merchant ("FCM") with the CFTC at relevant times and was a member of the Chicago Mercantile Exchange ("CME") at relevant times. PFG is protected by the bankruptcy stay set forth at Section 362 of the U.S. Bankruptcy Code by virtue of the fact that it is the subject of a bankruptcy petition pursuant to Chapter 7 of the U.S. Bankruptcy Code. See U.S. Bankruptcy Court for the Northern District of Illinois Dkt. No. 12-27488 (Filed July 10, 2012). PFG has allegedly commingled customer funds with its own funds in violation of applicable law. PFG participated in the course of conduct underlying this action and defendants' violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 et seq.

## PARTIES

3. Plaintiff Michael LaSalvia ("LaSalvia") is a natural person residing in Naperville, IL. LaSalvia maintained a customer account with PFG and believes that his funds have been commingled with PFG's own funds in violation of applicable law.

4. Defendant Russell L. Wasendorf, Sr. ("Wasendorf") was the Chief Executive Officer of PFG at relevant times.

5. Defendant Russell L. Wasendorf, Jr. ("Wasendorf Jr.") was the Chief Executive Officer of PFG at relevant times.

6. Defendant Brenda L. Cuypers ("Cuypers") was the Chief Financial

Officer of PFG at relevant times.

7. Defendant Susan Mary O'Meara ("O'Meara") was the Compliance Director of PFG at relevant times.

8. Plaintiff alleges on information and belief that at relevant times an unknown number of persons, referred to as Defendants John Does 1-5, inclusive, were engaged in the commingling of customer funds with PFG's own funds in violation of applicable law as alleged herein.

9. Plaintiff is presently unaware of the true names and identities of those Defendants sued herein as John Does 1-5.

10. Any reference made to such Defendants by specific name or otherwise, individually or plural, is also a reference to the actions of John Does 1-5, inclusive.

11. The acts alleged in this Complaint to have been committed by Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of each of the Defendants' affairs.

## FACTS UNDERLYING THE ACTION

12. In 1974 Congress established the CFTC, a federal regulatory agency with jurisdiction over futures trading. The same legislation authorized the creation of "registered futures associations," giving the futures industry the opportunity to create a nationwide self- regulatory organization.

13. The CFTC provides government oversight for the entire industry. Each U.S. futures exchange operates as a self-regulatory organization, governing its floor brokers, traders and member firms. NFA regulates every firm or individual who conducts futures trading business with public customers.

14. With certain exceptions, all persons and organizations that intend to do business as futures professionals must register under the CEA. In addition, all individuals and firms thatwish to conduct futures-related business with the public must apply for NFA Membership or Associate status.

15. A "Futures Commission Merchant" ("FCM") is defined as individuals, associations, partnerships, corporations, and trusts that solicit or accept orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any exchange and that accept payment from or extend credit to those whose orders are accepted.

16. It is a bedrock principle of regulation that a FCM such as PFG is not allowed to commingle funds held in customer accounts with its own funds in any circumstances.

17. Specifically, CFTC General Regulations Under the Commodity Exchange Act § 1.20 provides as follows:

> § 1.20 Customer funds to be segregated and separately accounted for.
>
> (a) All customer funds shall be separately accounted for and segregated as belonging to commodity or option customers. Such customer funds when deposited with any bank, trust company, clearing organization or another futures commission merchant shall be deposited under an account name which clearly identifies them as such and shows that they are segregated as required by the Act and this part. Each registrant shall obtain and retain in its files for the period provided in §1.31 a written acknowledgment from such bank, trust company, clearing organization, or futures commission merchant, that it was informed that the customer funds deposited therein are those of commodity or option customers and are being held in accordance with the provisions of the Act and this part: *Provided, however,* that an acknowledgment need not be obtained from a clearing organization that has adopted and submitted to the Commission rules that provide for the segregation as customer funds, in accordance with all relevant provisions of the Act and the rules and orders promulgated thereunder, of all funds held on behalf of customers. Under no circumstances shall any portion of customer funds be obligated to a clearing organization, any member of a contract market, a

futures commission merchant, or any depository except to purchase, margin, guarantee, secure, transfer, adjust or settle trades, contracts or commodity option transactions of commodity or option customers. No person, including any clearing organization or any depository, that has received customer funds for deposit in a segregated account, as provided in this section, may hold, dispose of, or use any such funds as belonging to any person other than the option or commodity customers of the futures commission merchant which deposited such funds.

\* \* \*

.

c) Each futures commission merchant shall treat and deal with the customer funds of a commodity customer or of an option customer as belonging to such commodity or option customer. All customer funds shall be separately accounted for, and shall not be commingled with the money, securities or property of a futures commission merchant or of any other person, or be used to secure or guarantee the trades, contracts or commodity options, or to secure or extend the credit, of any person other than the one for whom the same are held: *Provided, however,* That customer funds treated as belonging to the commodity or option customers of a futures commission merchant may for convenience be commingled and deposited in the same account or accounts with any bank or trust company, with another person registered as a futures commission merchant, or with a clearing organization, and that such share thereof as in the normal course of business is necessary to purchase, margin, guarantee, secure, transfer, adjust, or settle the trades, contracts or commodity options of such commodity or option customers or resulting market positions, with the clearing organization or with any other person registered as a futures commission merchant, may be withdrawn and applied to such purposes, including the payment of premiums to option grantors, commissions, brokerage, interest, taxes, storage and other fees and charges, lawfully accruing in connection with such trades, contracts or commodity options: *Provided, further,* That customer funds may be invested in instruments described in §1.25.

18.   The rules of the Chicago Mercantile Exchange ("CME") similarly prohibit commingling of customer funds with customer funds.

19.   PFG, per defendants and/or John Does 1-5, has apparently violated these bedrock principles and regulations and commingled customer funds with its own funds. The CFTC has alleged that Wasendorf and PFG have failed to maintain adequate customer funds in segregated accounts. That shortfall allegedly exceeds and has exceeded $200 million. PFG and Wasendorf have allegedly used customer funds for

5

purposes other than those intended by its customers, and have misappropriated these funds. The whereabouts of the funds is currently unknown.

20. Additionally, during at least this same period, PFG and Wasendorf have filed false reports with the CFTC regarding the amount of customer segregated funds held by PFG.

21. The CFTC alleges that since at least February 2010, PFG and Wasendorf have failed to maintain adequate customer funds in segregated accounts and have misappropriated those customer funds for purposes other than intended by its customers. The relevant PFG customer segregated account at U.S. Bank in Cedar Falls, Iowa is Account No. XXXX1845 ("1845 Account"). In particular,

    a. On or about February 28, 2010, PFG records showed a balance of approximately $207 million in the 1845 Account. PFG had received at least that amount from customers. However, the actual balance in the account was less than $10 million.

    b. On or about March 30,201 1, PFG records showed a balance of approximately $31 8 million in the 1845 Account. PFG had received at least that amount from customers. However, the actual balance in the account was less than $10 million.

    c. On or about July 9, 2012, PFG records showed a balance of approximately $225 million in the 1845 Account. PFG had received at least that amount from customers. However, the actual balance in the account was approximately $5 million.

22. Based on the foregoing, PFG, through defendants and/or John Does 1-5, has violated Section 13 of the Commodity Exchange Act. Defendants are also liable for such violations pursuant to Section 2(a)(1) of the Commodity Exchange Act. On information and belief, Plaintiff has been injured by this violation because it has or is likely to prevent Plaintiff from accessing his funds held in their PFG accounts and, in the

event PFG is insolvent, will likely result in monetary harm to Plaintiff if PFG is unable to repay the sums held in Plaintiff's PFG accounts.

## CLASS ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

24. The Class in this action ("Class") consists of persons, other than Defendants, their employees, affiliates and agents, who held money or other assets in PFG customer accounts as of any time during the longest period allowed by the applicable statutes of limitations, and in any event at least between January 1, 2010 and July 10, 2012 ("Class Period").

25. At least hundreds of persons are believed to be members of the putative class ("Class"), and those persons or entities are geographically dispersed. Therefore, joinder is impracticable pursuant to FRCP Rule 23(a)(1).

26. Common issues of fact or law predominate over individual issues within the meaning of FRCP Rule 23(a)(2).

27. Common issues of law and fact include but are not limited to:

(i) whether PFG commingle funds held in customer accounts with its own funds;

(ii) whether PFG and defendants violated the CEA;

(iii) whether a constructive or actual trust should be impressed upon the ill-gotten gains obtained by Defendants as fruits of their misconduct; and

(iv) the sum of Plaintiff's and the Class's damages.

7

28. Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class.

29. Plaintiff has retained competent counsel experienced with class actions and commodities litigation and intend to vigorously prosecute this action.

30. Common issues predominate. A class action is superior to all other methods for the fair and efficient adjudication of this controversy. Indeed, a class action is the only method by which Plaintiff and the Class can efficiently seek redress and obtain a uniform adjudication of their claims.

31. The size of individual damages is small in comparison to the complexity and scope of the Defendants' alleged unlawful conduct.

32. Plaintiff do not anticipate any difficulties in the management of this action as a class action.

**AS AND FOR A FIRST CAUSE OF ACTION FOR
VIOLATION OF THE COMMODITY EXCHANGE ACT
SECTION 13(a)(1) and 13(a)(5)**

33. Plaintiff incorporates and re-allege each of their previous allegations as though fully set forth herein.

34. Section 13(a)(1) of the CEA makes it unlawful for any "person registered or required to be registered under [the CEA] to embezzle, steal, purloin, or with criminal intent to convert to such person's use or to the use or another, any money securities or property having a value in excess of $100, which was received by such person or any employee or agent thereof to margin, guarantee or secure the trades or contracts of any customer or accruing to such customer as the result of such trades or contracts, or which otherwise was received from any customer, client or pool participant in connection with

8

the business of such person. PFG was at relevant times registered as an FCM under the CEA converting customer funds and/or commingling customer funds with PFG's funds.

35. Section 13(a)(5) of the Commodities Exchange Act makes it unlawful for any person to willfully violate any other section of the CEA or any regulation promulgated thereunder. CFTC General Regulations Under the Commodity Exchange Act § 1.20, reproduced at Paragraph 17, supra, is a regulation promulgated under the CEA and prohibits any commingling of customer funds with funds of an FCM.

36. PFG, through defendants and/or John Does 1-5, has violated Section 13(a)(1) and/or Section 13(a)(5) of the Commodity Exchange Act by converting customer funds and/or commingling customer funds with PFG's funds.

37. Plaintiff and the Class are each entitled to actual damages for the violations of the CEA alleged herein.

### AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF THE COMMODITY EXCHANGE ACT SECTION 2(a)(1)

38. Plaintiff incorporate and re-allege each of their previous allegations as though fully set forth herein.

39. PFG, through Wasendorf, the other defendants, and/or John Does 1-5, has violated Section 13(a)(1) and/or Section 13(a)(5) of the Commodity Exchange Act by converting customer funds and/or commingling customer funds with PFG's funds.

40. PFG, per defendants and/or John Does 1-5, was/were acting for and/or as agent(s) of PFG and Wasendorf Jr., Cuypers and O'Meara. Under Section 2(a)(1)(B) of the CEA, 7 U.S.C. §2(a)(1)(B), such defendants are liable for the acts of their agents or another person acting for them.

9

41. Plaintiff and the Class are each entitled to actual damages for the violations of the CEA alleged herein.

## JURY DEMAND

42. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

(a) Ordering that this action proceed as a class action as to all claims previously alleged;

(b) awarding money damages, including prejudgment interest, on each claim in an amount to be established at trial;

(c) awarding statutory attorneys' fees and costs, and other relief;

(d) impressing a trust on the ill-gotten gains of defendants in the ultimate res of which each Class member shall have an undivided interest;

(e) directing further proceedings to determine the distribution of the trust among Class members, *inter se*, and award attorneys' fees and expenses to Plaintiffs' counsel; and

(f) granting such other relief as to this Court may seem just and proper.

Dated: July 13, 2012

    SALAS WANG LLC

    s/Jeffrey M. Salas
    Jeffrey M. Salas
    John C. Wang
    155 N. Wacker Drive, Suite 4250
    Chicago, IL 60606
    Tel: 312.803.4963
    Fax: 312.244.3151
    jsalas@salaswang.com

    LAW OFFICES OF
      CHRISTOPHER J. GRAY P.C.
    Christopher Gray
    460 Park Avenue, 21st Floor
    New York, NY 10022
    Tel: 212.838.3221
    Fax: 212.937.3139
    chris@investorlawyers.net

    LAW OFFICES OF
      JOSHUA B. KONS, LLC
    Joshua B. Kons
    27 North Wacker Dr., No. 203
    Chicago, IL 60606
    Tel: 773.270.9051
    joshuakons@konslaw.com