# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Peregrine Financial Group Customer Litigation* | Civil Action No. 12-cv-5546<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Daniel G. Martin |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.  STATEMENT OF FACTS .........................................................................................1

    A.  Plaintiffs' Claims ...........................................................................................1

    B.  Procedural History .........................................................................................2

    C.  The Settlement ...............................................................................................3

II. ARGUMENT ..............................................................................................................5

    A.  Final Approval of the Settlement is Appropriate. ..........................................5

        1.  Standards for Court Approval of a Class Action Settlement ...............5

        2.  The Settlement Is an Excellent Recovery Given the Strengths and
            Weaknesses of Plaintiffs' Claims Against JPMorgan. .........................7

        3.  The Complexity, Length, and Expense of Continued Litigation
            Weigh in Favor of the Settlement. .......................................................9

        4.  Class Members' Reactions to the Settlement Have Been
            Overwhelmingly Positive, With No Objections Filed by Class
            Members to Date. ...............................................................................10

        5.  The Settlement Was Negotiated by Competent and Highly
            Experienced Class Counsel. ...............................................................10

        6.  Class Counsel Developed Sufficient Factual Information to Make a
            Reasonable Assessment of the Class's Claims. .................................11

        7.  The Settlement Is the Product of Zealous Arm's-Length
            Negotiation. ........................................................................................11

    B.  Adequate Notice Was Provided to the Class Consistent With the Court's
        Order Preliminarily Approving the Settlement. ...........................................12

    C.  The Plan of Allocation is Fair and Reasonable. ...........................................13

    D.  The Notice Requirements of the Class Action Fairness Act Have Been
        Satisfied. .......................................................................................................14

III. CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
  2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ...................................................................13

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................... *passim*

*In re AT & T Mobility Wireless Data Services Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................12

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ..............................................................7, 8, 11, 13

*Boggess v. Hogan*,
  410 F. Supp. 433 (N.D. Ill. 1975) .....................................................................13

*Carson v. Am. Brands Inc.*,
  450 U.S. 79 (1981) ..............................................................................................5

*Depoister v. Mary M. Holloway Found.*,
  36 F.3d 582 (7th Cir. 1994) ................................................................................6

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d (7th Cir. 1985) ...........................................................................5, 6, 13

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ...........................................................................6, 7

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .............................................................................5, 7

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) .........................................................................13

*Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*,
  834 F.2d 677 (7th Cir. 1987) ..............................................................................6

*Reynolds v. Beneficial Nat. Bank*,
  288 F.3d 277 (7th Cir. 2002) ..............................................................................7

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................12, 14

*Summers v. UAL Corp. ESOP Comm.*,
  No. 03 C 1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .................................................13

*Wong v. Accretive Health, Inc.*,
  No. 14-2191, 2014 WL 6888166 (7th Cir. Dec. 9, 2014) ....................................................7, 8

### STATUTES & FEDERAL RULES

28 U.S.C. § 1715(d) ......................................................................................................................14

Fed. R. Civ. P. 23 ....................................................................................................................5, 12

### OTHER AUTHORITIES

5 MOORE'S FED. PRAC. at § 23.164[2] ..........................................................................................6

Plaintiffs[1], individually and on behalf of the certified Class, respectfully submit this Memorandum in support of their motion for final approval of a proposed class action settlement (the "Settlement") with Defendant JPMorgan Chase Bank, N.A. ("JPMorgan") and Ira Bodenstein (the "Trustee"), not individually, but solely as Chapter 7 Trustee for the estate of Peregrine Financial Group, Inc. ("PFG")[2], and for approval of the proposed Plan of Allocation. The Settlement enables the Class to avoid the uncertainties and delays of continuing to litigate, and provides timely partial relief to the Class, which is composed largely of individual investors who lost substantial personal savings when PFG collapsed. Final approval will allow the Claims Administrator to distribute approximately $12 million to the former PFG customers in the Class. As discussed below, the Settlement is in all respects fair, reasonable, and adequate, as demonstrated by the minimal number of requests for exclusion that Class counsel have received.

## I. STATEMENT OF FACTS

### A. Plaintiffs' Claims

This case arises from Defendants U.S. Bank and JPMorgan's acts and omissions that facilitated the theft of over $215 million of customer funds that Plaintiffs and the Class entrusted to Peregrine Financial Group ("PFG"). PFG was required to hold its customers' money in special, statutorily designated "customer segregated accounts" to be used exclusively for the benefit of its customers. JPMorgan and U.S. Bank agreed to hold the money in accordance with the relevant provisions of the Commodity Exchange Act. However, over the course of about 20 years, PFG's founder and principal, Russell Wasendorf Sr., openly and regularly funneled

---

[1] The Plaintiffs are Brian Pannkuk, Jordan Robinson, J.D. Sailer, Joe Martano, Marcus Ibrahim, Mark Alexander, William Robert Evans, III, Kirk Houghton, Gurvaneet Randhawa, and Patricia Benvenuto.

[2] Ira Bodenstein is the Trustee in the proceeding captioned *In re Peregrine Fin. Group, Inc.*, No. 12-B-27488, pending in the United States Bankruptcy Court for the Northern District of Illinois.

customer funds from JPMorgan segregated accounts into an account at U.S. Bank (the "1845 Account"), from which he then stole the money. Plaintiffs allege that U.S. Bank and JPMorgan permitted Wasendorf to engage in a highly unusual and suspicious pattern of one-way transfers from the JPMorgan customer accounts into the 1845 Account, and that JPMorgan did not take appropriate steps to verify whether the transfers were authorized under the Commodity Exchange Act or whether the 1845 Account was in fact a customer segregated account. The facts of this case are set out more fully in the Court's September 25, 2014 Opinion and Order (ECF No. 256) granting in part and denying in part U.S. Bank's motion to dismiss.

**B.     Procedural History**

On October 5, 2012, this Court consolidated the suits by PFG's commodities customers and appointed Berger & Montague, P.C. and Girard Gibbs LLP as interim co-lead counsel. ECF No. 50. On December 21, 2012, Plaintiffs filed their Consolidated Amended Class Action Complaint. ECF No. 66. U.S. Bank and JPMorgan moved to dismiss on February 5, 2013, and both of those motions were fully briefed. *See* ECF No. 82, 88, 103, 106, 107.

On May 8, 2013, the Trustee filed an action against Plaintiffs seeking to enjoin this litigation. *See Bodenstein v. Pannkuk*, No. 13-00675 (Bankr. N.D. Ill.) ("BR ECF No." 1). On May 10, 2013, Judge Doyle stayed the instant action. BR ECF No. 16. The stay was lifted on January 8, 2014, when the bankruptcy court approved a cooperation agreement and settlement of the Trustee's action against Plaintiffs. BR ECF No. 2195.

On January 13, 2014, Plaintiffs filed their Second Amended Complaint ("SAC"). ECF No. 169. Pursuant to the parties' agreement during the course of settlement negotiations, JPMorgan did not file a motion to dismiss the SAC. U.S. Bank did move to dismiss, and on September 25, 2014, the Court granted in part and denied in part U.S. Bank's motion, allowing the core claims against U.S. Bank to proceed. ECF No. 256. Discovery between Plaintiffs and

U.S. Bank is ongoing.

Meanwhile, on March 7, 2014, Plaintiffs, JPMorgan, and the Trustee entered into the Settlement Agreement. On April 16, 2014 the bankruptcy court approved the Settlement.[3] On May 27, 2014, the bankruptcy court entered a final judgment against certain PFG foreign exchange and metals customers; at issue was the status of certain funds held in PFG's name, including the "Pooled Funds" discussed below on which the now-waived Forex Contingency was based. *See Secure Leverage Group, Inc. v. Bodenstein* (*In re Peregrine Fin. Group, Inc.*), No. 12-A-01572, 12-B-27488, Judgment Order (N.D. Ill. May 27, 2014), ECF No. 153, & Mem. Op., ECF No. 152.

On October 1, 2014, this Court preliminarily approved the Settlement, approved the plan and form of notice, certified the Settlement Class, and appointed Class Counsel. ECF No. 261.

### C. The Settlement

The Settlement is the result of several months of arm's-length negotiations between Plaintiffs, the Trustee, and JPMorgan. It resolves Plaintiffs' claims against JPMorgan and JPMorgan and the Trustee's claims against each other. The Settlement provides for cash distributions of approximately $12 million to the Class from two sources. First, JPMorgan will make a payment of $1.25 million (the "Distribution Cash Payment"), with up to $50,000 advanced to cover the cost of class notice. SA ¶¶ 2u, 2d, 9. Second, JPMorgan has agreed to release certain Pooled Funds[4] (*see id.* ¶ 12) totaling approximately $16 million as of October 16,

---

[3] *In re: Peregrine Fin. Group, Inc.*, No. 12-27488, Order Granting Trustee's Mot. to Approve Settlement with JPMorgan Chase Bank, N.A. & Customer Representative Pltfs. (N.D. Ill. Apr. 16, 2014) (BR ECF No. 2460).

[4] Capitalized terms not defined here shall have the meanings stated in the Settlement Agreement ("SA"), which was previously submitted to the Court as Exhibit 2 to the Dell'Angelo declaration accompanying Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Class Certification in Light of Settlement (ECF No. 251-3).

2013. *Id.* The Trustee has agreed to then transfer 67% of the Pooled Funds, or roughly $10.7 million, to the Class.[5] *Id.* ¶¶ 2p, 2ll, 13. The Settlement will thus mark the latest partial recovery by the 4d customers, following three interim distributions to these customers by the Trustee totaling approximately $135 million, plus a recently approved distribution of $25 million. *See* Trustee's Motion for Entry of an Order (1) Authorizing Up to a 100% Distribution on Allowed 30.7 Customer Claims and an Interim Distribution on Allowed 4d Customer Claims and (2) Authorizing the Allocation of Certain Settlement Proceeds to the 4d Customer Estate, *In re Peregrine Fin. Group, Inc.*, No. 12-B-27488 (N.D. Ill. Dec. 4, 2014) (BR ECF No. 3237), at ¶¶ 20-25; Dec. 11, 2014 Order Granting Trustee's Motion (BR ECF No. 3256).

Although the Settlement Agreement contains a contingency (the "Forex Contingency") to account for competing claims by PFG's foreign exchange and precious metals customers against the Trustee, *see* SA (ECF No. 251-3) ¶¶ 2bb, 6, 34g, that contingency is not at issue here because the parties agreed to waive it. The Forex Contingency was included to account for competing claims by PFG's foreign exchange and precious metals customers against the Trustee.[6] *Id.* ¶¶ 6, 34g. The Forex Customers assert they have a superior claim to certain funds held in the name of PFG, including, potentially, the Pooled Funds. *Id.* ¶¶ 2bb. The Forex Contingency, which is waivable pursuant to SA ¶ 34, requires a determination by a final order or settlement that the Forex Customers do not have a superior direct claim to, a superior direct interest in, or any other superior right to any portion of the Pooled Funds. *Id.* at ¶ 2bb. The Forex litigation is pending: the bankruptcy court entered judgment in favor of the Trustee, but the Forex Plaintiffs have

---

[5] The exact amount will be determined when JPMorgan disburses the funds to the Trustee because several accounts are held in foreign currencies. The aggregate converted balance of those foreign currencies has a value of approximately $2 million. The remaining $14,057,561.06 is not held in foreign currencies and is therefore not subject to exchange rate fluctuations.

[6] The Settlement also includes a contingency providing JPMorgan the right to terminate the Settlement in the event that a specified number or type of Settlement Class members opt-out of the litigation. SA ¶ 36.

4

appealed. Nonetheless, the parties here have agreed to waive the Forex Contingency and thereby allow the Settlement to go forward. The Trustee has determined that the PFG estate already has sufficient funds excluding the Pooled Funds in their entirety to satisfy any judgment in the Forex litigation even in the event that the bankruptcy court's favorable judgment were reversed on appeal. Thus, the Forex Contingency poses no obstacle to, and the Forex Customers will suffer no prejudice from, the prompt implementation of the Settlement.

## II. ARGUMENT

### A. Final Approval of the Settlement is Appropriate.

#### 1. Standards for Court Approval of a Class Action Settlement

A class action settlement warrants final approval if it is "fair, reasonable, and adequate." Fed.R. Civ.P. 23(e)(2). There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313.

The Court's inquiry "is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196. Because the point of compromise is to avoid determining unsettled issues and the time and expense of litigation, a court should not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands Inc.*, 450 U.S. 79, 99 n.14 (1981). *See also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d at 889 (7th Cir. 1985) (the district court should "refrain from resolving the merits of the controversy or

making a precise determination of the parties' respective legal rights"), *cert. denied*, 478 U.S. 1004 (1986); *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) ("The temptation to convert a settlement hearing into a full trial on the merits must be resisted.").

A district court reviewing a settlement "must clearly set forth in the record its reasons for approving the settlement". *Armstrong,* 616 F.2d at 315. At the same time, "[i]t is not the burden of the proponents or the duty of the district court to support individual elements of the decree under some evidentiary standard akin to that for findings of fact." *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982). Indeed, there is "no requirement that an evidentiary hearing be conducted as a precondition to approving a settlement in a class action suit." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994).

The Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," and so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889. *Accord* 5 MOORE'S FED. PRAC. at § 23.164[2] ("a proposed settlement may be fair and adequate even though it amounts to only a fraction of the potential recovery in a fully litigated case"). Indeed, "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

To guide courts in assessing the fairness of a settlement, the Seventh Circuit has identified a list of key factors to consider:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the

amount of discovery completed.

*Gautreaux*, 690 F.2d at 631. Courts also consider whether the settlement was the product of arms-length negotiation rather than collusion. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 345 (N.D. Ill. 2010). Courts should view these factors in their entirety, *Armstrong*, 616 F.2d at 315, although generally the first factor is considered the most important, *id*. at 314. In this case, each of the factors supports final approval of the Settlement.

### 2. The Settlement Is an Excellent Recovery Given the Strengths and Weaknesses of Plaintiffs' Claims Against JPMorgan.

"[T]he first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby,* 75 F.3d at 1199 "While consideration of this factor will require some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated." *Armstrong*, 616 F.2d at 314.[7]

The Settlement provides an excellent recovery for the Class in light of the considerable challenges and uncertainty Plaintiffs would have faced in proving their claims. The Settlement will provide roughly $12 million to the Class, or about 5.5% of the Class's total estimated loss of segregated customer funds, before incurring the attorneys' fees and costs required to litigate

---

[7] Although some authorities state that courts should attempt "to quantify the net expected value of continued litigation," *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 284 (7th Cir. 2002), the Seventh Circuit recently upheld a final approval decision that did not engage in such an analysis. *Wong v. Accretive Health, Inc.*, No. 14-2191, 2014 WL 6888166, at *3 (7th Cir. Dec. 9, 2014). Among the reasons cited by the court were the facts that there were no "'suspicious circumstances,'" as there had been in *Reynolds*, and that a valuation of the litigation would require expert testimony, "with the costs of such a battle borne by the class — exactly the type of litigation the parties were hoping to avoid by settling." *Id*. at *3. Such is also the case here: there has been no suggestion of improper conduct or self-dealing in the negotiation of the settlement, and the parties seek to settle this case at an early stage precisely to avoid expenses such as expert fees.

7

through discovery, summary judgment, and trial. "Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'" *AT&T*, 270 F.R.D. at 347 (citation omitted). Additionally, the Pooled Funds are potentially "a limited, wasting asset," *Wong*, 2014 WL 6888166, at *3, a circumstance that favors an early settlement, *id.* In the bankruptcy case, JPMorgan asserted the right to indemnity for any exposure relating to any PFG bank accounts at JPMorgan, including its losses, attorneys' fees, and expenses in this case, and has argued its indemnity claims are secured by, among other things, the Pooled Funds.

It is unlikely that Plaintiffs would obtain a better outcome against JPMorgan by litigating this case further. The SAC asserts two claims against JPMorgan, breach of contract and breach of fiduciary duty. ECF No. 169. Plaintiffs allege they were intended third-party beneficiaries of the agreement between JPMorgan and PFG, which JPMorgan breached by failing to maintain the security of the customer funds deposited at JPMorgan. SAC ¶¶ 409-14. Plaintiffs also allege JPMorgan owed them a fiduciary duty arising out of the nature of their funds as special deposits, and that it breached that duty by failing to exercise appropriate care in transferring Plaintiffs' funds to the 1845 Account. SAC ¶ 419. In support of both counts, Plaintiffs allege JPMorgan breached its duties to the Class by processing millions of dollars in transfers into the 1845 Account at U.S. Bank, even though the size, frequency, and nature of the transfers should have raised "red flags" (¶¶ 252, 260, 287), and by failing to conduct routine due diligence of the 1845 Account (¶ 293).

Although Plaintiffs believe in the strength of their claims against JPMorgan, JPMorgan's Motion to Dismiss (ECF Nos. 87 & 88) raises a number of defenses. To counter Plaintiffs' breach of contract claim, JPMorgan produced what it alleges is the operative contract, and

argued that it does not expressly require JPMorgan to investigate the 1845 Account at U.S. Bank before transferring customer money into that account. JPMorgan also argued that Wasendorf effectively concealed his fraud from JPMorgan and thus JPMorgan transferred funds into what outwardly appeared to be another customer segregated account; by contrast, Plaintiffs believe the evidence will show U.S. Bank knew of Wasendorf's breaches of duty to PFG customers and nevertheless facilitated his theft of customer money.

While Plaintiffs believe they could overcome JPMorgan's defenses, they cannot ignore the risk that this Court or a reviewing court might not accept all of their arguments. In addition, Plaintiffs acknowledge there are very few cases with facts analogous to those Plaintiffs allege. Thus, there is considerable uncertainty regarding the outcome of Plaintiffs' claims in light of JPMorgan's motion to dismiss and the more limited facts alleged against JPMorgan (in contrast to the detailed allegations against U.S. Bank).

Importantly, not only does the Settlement provide relatively prompt relief for the Class without impairing the Class's ability to make a potential full recovery, it also frees up Class Counsel to pursue their claims against U.S. Bank, the defendant that Plaintiffs believe is far more culpable for the Class's losses. Thus, the first and most important final approval factor, *see Armstrong,* 616 F.2d at 314, favors final approval.

### 3. The Complexity, Length, and Expense of Continued Litigation Weigh in Favor of the Settlement.

Plaintiffs' claims against JPMorgan would require significant, time-consuming, and expensive discovery and proof of such matters as JPMorgan's regulatory compliance procedures and its employees' knowledge or suspicion, if any, of wrongdoing at PFG and U.S. Bank. Moreover, if the case had not settled, the Class would have incurred the cost of the additional briefing and argument necessary at each stage of the litigation. The case against JPMorgan

(including appeals) would likely have taken years to resolve. The Settlement not only saves the Class members these major litigation expenses, it also removes JPMorgan from the case, allowing the parties and the Court to focus their efforts on Plaintiffs' claims against U.S. Bank. This factor supports final approval.

### 4. Class Members' Reactions to the Settlement Have Been Overwhelmingly Positive, With No Objections Filed by Class Members to Date.

The third and fourth final approval factors – the amount of opposition and the reaction of the class members – both support final approval. Out of over 15,000 potential Settlement Class members who were sent notices, only one has chosen to opt out, and none have filed objections.[8] *See* Declaration of Katherine Nownes-Whitaker ¶¶ 9, 16; Declaration of Co-Lead Counsel Michael C. Dell'Angelo ¶ 13. The minimal number of opt-outs and the absence of any objections by Class members to date speak to the Settlement's fairness.

### 5. The Settlement Was Negotiated by Competent and Highly Experienced Class Counsel.

Class Counsel, based on their decades of experience in class actions and in relevant practice areas such as securities and investment fraud[9], believe the Settlement is an excellent result for the Class. "While the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on

---

[8] While two objections were filed by non-Class members – namely, a "partial opposition" filed the Forex Plaintiffs (not the 4d customers in the Settlement Class) in the bankruptcy case (*see* Secure Leverage Pltfs.' Mem. in Partial Opp'n to Motion Seeking Approval for Stlmt. with JPMorgan Chase at 1, *In re Peregrine Fin. Group, Inc.*, No. 12-B-27488 (N.D. Ill. Mar. 14, 2014) (Ex. 8)), and one filed by U.S. Bank in this case, ECF No. 257 & 259 (corrected) – the Court has already overruled both objections. *See* Dkt. 260.

[9] For detailed information about Co-Lead Counsel's qualifications and experience, counsel refer the Court to their respective firm web pages: Berger & Montague, P.C., www.bergermontague.com; and Girard Gibbs LLP, www.girardgibbs.com. Counsel will provide firm resumes should the Court request them.

the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. Class Counsel firmly believe the Settlement is a fair and favorable resolution of the Class's claims against JPMorgan.

### 6. Class Counsel Developed Sufficient Factual Information to Make a Reasonable Assessment of the Class's Claims.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. "The lack of discovery prior to settlement, however, does not preclude a court from approving a settlement." *AT&T*, 270 F.R.D. at 350. The *AT&T* court found it significant that class counsel had conducted extensive "informal discovery." *Id.*

Plaintiffs' discovery efforts (both formal and informal) against both Defendants have provided more than sufficient perspective for the Court and Class Counsel to evaluate the claims against JPMorgan. Before the Settlement, Plaintiffs had begun document discovery against JPMorgan, interviewed key PFG personnel, and reviewed documents produced by the Trustee, Russell Wasendorf Jr., PFG's former auditor, and U.S. Bank. Since negotiating the Settlement, Plaintiffs have continued prosecuting their claims against U.S. Bank – and thus their discovery of the core facts surrounding Wasendorf's fraud – taking numerous depositions and obtaining and searching hundreds of thousands [of pages of documents. Counsel have reviewed the bankruptcy estate's documents, deposed U.S. Bank and PFG employees, and analyzed additional productions of documents by U.S. Bank, the CFTC, and the NFA. Plaintiffs' discovery efforts both before and since negotiating the Settlement have confirmed Class Counsel's assessment of the strengths and weaknesses of the claims against JPMorgan.

### 7. The Settlement Is the Product of Zealous Arm's-Length Negotiation.

The Settlement was reached only after vigorous negotiation and does not unfairly favor Plaintiffs or Class Counsel over the Class. Any attorneys' fee award is subject to Court approval.

11

SA ¶ 32 (ECF No. 251-3). Moreover, the Settlement does not provide for any preferential treatment for the Class Representatives; rather, each shall receive his or her appropriate share of the Settlement funds, the same as all other Class members. SA ¶ 19. There has been no suggestion raised by any party that the Settlement is anything but a fair, arm's-length agreement.

### B. Adequate Notice Was Provided to the Class Consistent With the Court's Order Preliminarily Approving the Settlement.

Constitutional due process and the Federal Rules of Civil Procedure provide that class members must be given "the best notice that is practicable under the circumstances." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011); Fed. R. Civ. P. 23(3). "Where lists of class members and their addresses are readily ascertainable, the court generally demands individual notice." *Id.* Nonetheless, "[d]ue process does not require that every class member receive notice." *In re AT & T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011). Rather, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections …." *Id*. (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

Class Counsel have ensured that proper individual notice was given to the Class in accordance with the Court's preliminary approval order ("PA Order") (ECF No. 261). Counsel retained Rust Consulting/Omni Bankruptcy ("Omni") as the claims administrator for the settlement. Omni is also the claims administrator for the PFG bankruptcy proceeding. Individual notice of the Settlement was provided by email or first-class mail, and the Notices, Proof of Claim Form, and other information were made (and remain) available on the website of the Claims Administrator. *See* Nownes-Whitaker Decl. ¶¶ 4-12. Notification by first-class mail or email is sufficient to satisfy Rule 23 and due process concerns. *See* PA Order ¶ 8 (ECF No. 261);

*AT&T*, 270 F.R.D. at 351 (approving email notice); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233-34 (S.D. Ill. 2001) (finding notice was adequate where class counsel issued notice via first-class mail and provided a website and toll-free number for class members).

The content of the Notice is also sufficiently clear, detailed, and instructive to satisfy due process. The Notice informs Class members of the claims involved in this case, the terms of the Settlement, the definition of the Class, the attorneys' fee request, the date and location of the final fairness hearing, the opportunity to attend and speak at the hearing, the opportunity to object, the role of Class Counsel, and how to obtain additional information. The language of the Notice is clear and straightforward, and the Notice is organized to make it easy for Class members to readily locate the information they need. *Cf. Boggess v. Hogan*, 410 F. Supp. 433, 442 (N.D. Ill. 1975) (notice "must reasonably apprise members of the class of the terms of the settlement and of the options open to those who would dissent."); *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *14 (N.D. Ill. Feb. 28, 2012) (approving notice that was "written in a straightforward fashion that the settlement class members …can easily understand").

### C. The Plan of Allocation is Fair and Reasonable.

"As with all aspects of class action settlements, [the Court] must ensure that any allocation plan is reasonable and equitable to all class members." *Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (citing *Hiram Walker*, 768 F.2d at 891). The proposed Plan of Allocation was included in the Notice that was sent to all Class members for whom an email address was available in the Trustee's or Omni's records and was also made available on Omni's website. Nownes-Whitaker Decl. Ex. A (Notice), p.7, and was attached as Exhibit D to the Settlement Agreement (ECF 251-3). The Plan

provides that the proceeds of the Settlement, net of Court-approved attorneys' fees, costs of litigation, and notice costs ("Net Distribution Settlement Fund"), be distributed as follows:

- For "New Claimants" (Class members who do not have allowed claims in the bankruptcy action), each "shall receive a share of the Net Settlement Fund that is determined by multiplying the amount of such New Claimant's timely claim as approved in the Customer Class Action by a payment ratio computed as: the amount of the Customer Pooled Funds Allocation divided by $215,000,000.00." ECF No. 251-3, Ex. D, ¶ 5  The amount to be distributed to New Claimants is capped at 50% of the Net Distribution Settlement Fund. *Id.* ¶ 6.

- For Class members with allowed claims in the bankruptcy case: "After the determination of the aggregate amount to be disbursed to the New Claimants, the balance of the Net Distribution Fund shall be transferred to the Trustee for distribution to Settlement Class Members who hold Allowed Claims in the Bankruptcy Case." *Id.* ¶ 7.

The Plan's goal is to ensure that each Class member receives a recovery that is proportional to his or her actual losses. While the Plan gives some priority to New Claimants, this treatment is justified because the Class members with approved bankruptcy claims have already received partial reimbursement of their losses, whereas the New Claimants have not. This Court has previously recognized that a plan of allocation need not be strictly *pro rata* so long as it "is appropriately tailored to the facts and law at issue in this case, and is fair, reasonable, and adequate." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011).

### D. The Notice Requirements of the Class Action Fairness Act Have Been Satisfied.

The Class Action Fairness Act, or CAFA, 28 U.S.C. § 1715 *et seq.*, requires each Defendant to notify appropriate Federal officials of the proposed settlement. No sooner than 90 days after notification, the Court may enter an order granting approval of the settlement. 28 U.S.C. § 1715(d). JPMorgan provided notice of the proposed settlement to the appropriate Federal officials on September 15 and October 17, 2014. *See* Ex. 1 hereto (CAFA letters). By the scheduled date of the final approval hearing (January 27, 2015) the ninety day period will have

run, and the Settlement may be approved.

**III. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the attached Proposed Order and Final Judgment which, *inter alia*, grants final approval of the settlement pursuant to Fed. R. Civ. P. 23(e), dismisses the claims with prejudice against JPMorgan, and approves the allocation plan.

Dated: December 23, 2014

Respectfully submitted,

*/s/* Michael Dell'Angelo
Merrill G. Davidoff
Michael C. Dell'Angelo
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
mdellangelo@bm.net

*/s/* Daniel C. Girard
Daniel C. Girard
David Stein
GIRARD GIBBS LLP
601 California Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dcg@girardgibbs.com

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

Norman E. Siegel, *pro hac vice*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (866) 714-7112
Facsimile: (816) 714-7101

Douglas G. Thompson
Michael G. McLellan
Robert O. Wilson
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington, District of Columbia 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

Adam J. Levitt
Edmund S. Aronowitz
John E. Tangren
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 1200
Chicago, IL 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com
earonowitz@gelaw.com
jtangren@gelaw.com

*Plaintiffs' Executive Committee*