UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Peregrine Financial Group Customer Litigation* | Civil Action No: 12-cv-5546<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Daniel G. Martin |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL U.S. BANK'S PRODUCTION OF DOCUMENTS AND TO DETERMINE THE SUFFICIENCY OF U.S. BANK'S OBJECTIONS TO REQUESTS FOR ADMISSION**

Pursuant to Federal Rules of Civil Procedure 37(a) and 36(a)(6), Plaintiffs respectfully move for an Order (1) compelling U.S. Bank to produce documents responsive to five document requests, and (2) holding U.S. Bank's objections to two requests for admission to be insufficient and requiring U.S. Bank to serve an answer.

**I. INTRODUCTION**

This motion arises from an impasse with respect to five document requests and two requests for admission. The parties have met and conferred and resolved many issues, but these matters remain in dispute. Plaintiffs seek an order directing U.S. Bank to produce the requested documents and to either admit or deny the requests for admission.

Each of the five document requests at issue pertains to key facts in this case. As the Court may recall, this case concerns U.S. Bank's maintenance of a customer segregated funds account for the now-bankrupt Peregrine Financial Group, Inc. Plaintiffs contend that U.S. Bank maintained the customer segregated funds account in a commercially unjustifiable manner, and that the bank also acted in bad faith by ignoring obvious misconduct by Peregrine and its owner, Russell Wasendorf Sr. The document requests seek information concerning U.S. Bank's

1

position in regards to how customer segregated funds accounts should be maintained and also concerning whether U.S. Bank indeed recognized Peregrine and Wasendorf's misconduct, yet opted not to investigate.

U.S. Bank declined to produce the requested documents on three grounds. First, the bank claims documents created after Peregrine's July 2012 collapse reflect the bank's subsequent remedial measures, and are thus not admissible. As discussed below, however, several Seventh Circuit courts have rejected this very argument; even if the documents are not ultimately admissible at trial, they remain discoverable under Rule 26(b)(1). Second, the bank argues that a federal banking statute bars it from producing certain internal investigatory documents—known as Internal Referral Forms (IRFs) and Internal Suspicious Activity Reports (ISARs). But the actual statutory text does not cover either document, instead barring disclosure of a third type of document (which Plaintiffs explicitly carved out of their requests). Third, the bank refused to produce a job description for one of its key employees. As discussed below, the job description falls within the scope of one of Plaintiffs' requests and should thus be produced.

The two requests for admission at issue raise a single question: whether U.S. Bank can refuse to admit or deny that Peregrine and its former owner owed fiduciary duties to Peregrine's customers. U.S. Bank argues that the requests improperly seek legal conclusions, but Rule 36(a)(1)(A) expressly condones requests that ask for the application of law to fact.

Pursuant to Local Rule 37.2, the parties held meet and confer calls on December 23, 2014, January 5, 2015, and February 3 and 5, 2015 to discuss these and other issues. (Kramer Decl., ¶¶ 6-7.) The parties also exchanged correspondence on the requests and responses, which are attached as Exhibits E, F, and G to the accompanying declaration of Elizabeth Kramer. As

2

the parties have attempted in good faith to resolve these disputes cooperatively, Plaintiffs respectfully request that the Court grant their motion to compel.

## II. LEGAL STANDARD

The burden in a discovery dispute rests upon the objecting party to show why a response or document production should not be compelled. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Courts have broad discretion in deciding motions to compel. *U.S. S.E.C. v. A Chicago Convention Ctr.*, No. 13 C 982, 2013 WL 4010585, at *1 (N.D. Ill. Aug. 5, 2013) (citing *James v. Hyatt Regency Chi.,* 707 F.3d 775, 784 (7th Cir.2013)).

With respect to requests for production of documents under Federal Rule of Civil Procedure 34, a party may file a motion to compel production any time another party "fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iv); *see also* Committee Notes to Fed. R. Civ. P. 37(a) (1970) ("Rule 37(a) provides relief to a party seeking discovery against one who… fails to afford the discovery sought."). "If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper." *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, No. 12 C 1446, 2013 WL 505252, at *3 (N.D.Ill. Feb.12, 2013).

With respect to requests for admission under Federal Rule of Civil Procedure 36, a party may serve a written request for the admission of the truth of matters relating to "the application of law to fact." *Hanley v. Como Inn*, No. 99 C 1486, 2003 WL 1989607, at *1 (N.D. Ill. Apr. 28, 2003); Fed. R. Civ. P. 36(a)(1)(A). "[T]he purpose of Rule 36 is to expedite trial by determining which issues are in genuine dispute." *C & F Packing Co. v. IBP,* No. 93 C 1601, 1994 WL 36874, at *5 (N.D. Ill. Feb. 7, 1994). In answering a request for admissions, the answering party

must admit, deny, or "set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." Fed. R. Civ. P. 36(a).

## III. ARGUMENT

### A. U.S. Bank's Relevance Objection Concerning Documents Post-Dating Peregrine's Collapse

Two of the document requests at issue seek documents that post-date Peregrine's collapse in July 2012. The text of those requests is set forth below:

> No. 85: All communications in or after July 2012 discussing implemented or contemplated U.S. Bank rules, policies, procedures, or guidelines and the Peregrine Financial Group Inc. collapse or related events.

> No. 105: All documents, irrespective of when they were created, that relate to best practices, industry standards, or customs for maintaining CEA customer segregated funds accounts or other accounts held by fiduciaries as such.

(Kramer Decl., Ex. A at 3, 6.)

U.S. Bank objected to Request No. 85 and to Request No. 105 (to the extent it called for documents from the post-collapse period) on relevance grounds. (Kramer Decl., Ex. B at 11-12, 17.) With respect to Request No. 85, U.S. Bank wrote that documents created after PFG's collapse "are not probative of the existence or breach of any duty that U.S. Bank allegedly owed to Plaintiffs" and "evidence relating to subsequent remedial measures is inadmissible." (Kramer Decl., Ex. B at 11-12.) U.S. Bank maintains the relevance objection, refusing to conduct any search or production. With respect to Request 105, U.S. Bank agreed to conduct a search for pre-collapse documents, but again stood on a relevance objection for all documents obtained or created after the date of Peregrine's collapse in July 2012. (Kramer Decl., Ex. B at 17.) The parties met and conferred on these requests and were unable to resolve U.S. Bank's objections. (Kramer Decl., Ex. E at 7.)

4

As Plaintiffs explained during the meet and confer process, they view the requested documents as relevant for several reasons, notwithstanding the fact that they post-date Peregrine's collapse. (Kramer Decl., ¶ 8.) In particular, one of Plaintiffs' causes of action alleges that U.S. Bank acted in bad faith and thus in violation of the Illinois Fiduciary Obligations Act. Part of the bad faith analysis turns on whether a bank adopted "commercially unreasonable" policies or procedures with respect to the transactions at issue. *Cont'l Cas. Co. v. Am. Nat'l Bank & Trust Co. of Chicago*, 768 N.E.2d 352, 367 (Ill. App. 2002); *see also id.* at 366 ("The Ohio Supreme Court determined that it was *commercially unjustifiable* for the bank to institute a procedure that permitted this type of theft to occur.") (emphasis added). As a result, much of the discovery in this case has concerned the policies, procedures, and guidelines that U.S. Bank implemented in an attempt to determine whether the bank maintained the Peregrine account in a commercially reasonable manner. Plaintiffs believe the two requests at issue may, for example, uncover evidence that U.S. Bank itself recognized after Peregrine's collapse that its own policies, procedures, and guidelines were commercially unreasonable and thus contributed to the loss of the Peregrine customers' funds. In other words, documents created after the collapse may well be probative of the commercial reasonableness of U.S. Bank's actions beforehand. *See, e.g. Montalvo v. Hutchinson*, 837 F. Supp. 576, 581 (S.D.N.Y. 1993) (ordering production of personnel files dated after alleged incident of police misconduct: "Events after a disputed incident often shed light both on the intent of participants, and on institutional or individual patterns of behavior. Depending on the precise circumstances involved, such post-incident occurrences can be highly relevant.").

U.S. Bank's position that it can refuse to comply with requests because the responsive documents may be inadmissible as subsequent remedial measures under Fed. R. Evid. 407 is

5

contrary to the express language of Rule 26, which provides that discoverable information "need not be admissible at the trial." Fed. R. Civ. P. 26(b)(1); *accord Menendez v. Wal-Mart Stores E. L.P.*, No. 1:10-CV-00053, 2012 WL 2159223, at *2 (N.D. Ind. June 13, 2012) ("JLG's focus on Federal Rule of Evidence 407 is misplaced, as what is admissible does not define what is discoverable"). Several courts in this district and elsewhere have ruled accordingly. Notably, in *Jumper v. Yellow Corp.*, a court in this district cited the Weinstein's Evidence treatise and a number of prior rulings for the conclusion that "[t]he standard of admissibility established by Rule 407 for evidence of subsequent remedial measures is not the same as that for pretrial discovery. … The better view is to permit discovery, not only because Rule 407 is essentially a rule of public policy rather than of relevancy, but also because subsequent remedial measures might be admissible to prove a consequential, material fact in issue other than negligence." 176 F.R.D. 282, 284 (N.D. Ill. 1997) (quoting 2 WEINSTEIN, WEINSTEIN'S EVIDENCE ¶ 407[07] at 407–44 (1996)).

Likewise, in *Stallings v. Union Pac. R. Co.*, for example, Judge Nolan rejected a discovery objection based on the subsequent remedial measure doctrine, agreeing that the doctrine goes to admissibility at trial, not discoverability, and in any event the evidence may well be admissible, "depending on what Defendants argue at trial." No. 01 C 1056, 2003 WL 21317297, at *10 (N.D. Ill. June 6, 2003), *report and recommendation adopted sub nom.*, 2003 WL 21688235 (N.D. Ill. July 17, 2003). Similarly, the court in *Phillips v. Leitz Tooling Sys.*, held that Rule 407 "does not prevent the discovery of the measures." No. 3:06-CV-77, 2007 WL 4438863, at *1 (S.D. Ind. Dec. 12, 2007).

Since the subsequent remedial measures doctrine pertains to admissibility, not discoverability, Plaintiffs request that the Court overrule U.S. Bank's objection and direct the bank to produce all responsive documents.

**B. IRFs and ISAR Documents Relating to U.S. Bank Internal Investigative Efforts.**

The next two document requests at issue are directed a finding out if U.S. Bank recognized any misconduct related to Peregrine's accounts before Peregrine collapsed. The requests are set forth below:

> No. 99: All internal referral forms (IRFs) drafted or completed by a U.S. Bank employee, and the Documents gathered in the process of creating the IRFs, that relate to Wasendorf, Peregrine Financial Group Inc., or any other Wasendorf controlled entity.
>
> No. 100: All internal suspicious activity reports (ISARs or forms serving the same function as ISARs but titled differently) drafted or completed by a U.S. Bank employee, and the communications related to and Documents gathered in the process of creating the ISARs or similar reports, that relate to Wasendorf, Peregrine Financial Group Inc. or any other Wasendorf-controlled entity."

(Kramer Decl., Ex. A at 5.) These documents pertain to U.S. Bank employees' identification and assessment of potentially fraudulent customer conduct and account activity. This information bears directly on whether and how the bank took action in response to Peregrine and its owner's conduct and account activity.

U.S. Bank's sole objection to the requests is that "31 U.S.C. 5318 and 12 C.F.R. 21.11(k)(l) preclude it from responding." (Kramer Decl., Ex. B at 15-16.) During the meet and confer process, Plaintiffs explained that they understand those statutes to apply only to official Suspicious Activity Reports (SARs) filed with the federal government, as opposed to the bank's internal forms, reports, and related documents. (Kramer Decl., Ex. E at 10.) Initially, U.S. Bank agreed to provide a letter citing authority to support its position that the statutes apply broadly to all responsive documents. (Kramer Decl., Ex. E at 7.) The bank later opted not to provide a

7

letter, and instead stood on its objection and declined to produce documents. U.S. Bank promised additional follow up regarding these requests, but never provided it despite several requests to U.S. Bank counsel. (Kramer Decl., Ex. E at 5, 4, 2; Ex. F at 1; Ex. G at 1.) By failing to provide the promised follow up, U.S. Bank prevented any discussion on the scope of the requests, the universe of responsive documents, and which, if any, might fall under the claimed privilege.

U.S. Bank's statutory objection should be overruled. The statute and regulation that U.S. Bank cited in its objections apply only to Suspicious Activity Reports (SARs), which are made to the Department of the Treasury, and not to IRFs, ISARs, or other non-SAR forms or reports. *See* 31 U.S.C. § 5318(g)(1) & (g)(2)(A)(i); 12 C.F.R. § 21.11(k)(1). In fact, 12 C.F.R. § 21.11(k)(ii)(A)(2) explicitly states that the regulation should not be construed as prohibiting disclosure of "[t]he underlying facts, transactions, and documents upon which a SAR is based." *See* also *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1217 (M.D. Fla. 2013) ("[T]he SAR privilege does not shield from discovery reports, memoranda, or underlying transactional documents generated by a bank's internal investigation procedures."). Because U.S. Bank's legal argument has no merit, Plaintiffs ask that the Court order U.S. Bank to produce all responsive documents.

### C. Job Description for U.S. Bank Senior Vice President of Commercial Lending

The final document request at issue pertains to Plaintiffs' request that U.S. Bank produce the job description for Doug Boe in his capacity as Vice President of Commercial Lending at U.S. Bank. During their final check to make sure nothing had been overlooked as the close of discovery approached, Plaintiffs' counsel noted that although U.S. Bank had produced Mr. Boe's job description as relationship manager—he was the relationship manager assigned to the

Peregrine accounts—the bank had not produced the job description for his role as Vice President of Commercial Lending. This missing document is potentially important, since Mr. Boe was responsible for over $9 million in loans that U.S. Bank extended to fund the construction of Peregrine's corporate headquarters. Plaintiffs allege that U.S. Bank improperly accepted PFG's customer funds as security in connection with those loans. Mr. Boe's job description may touch on, for example, whether he was responsible for understanding the source of the money used to fund the construction and repay the loans.

U.S. Bank declined to produce the job description on the grounds that it did not fall within the scope of any of Plaintiffs' document requests. Plaintiffs responded by referring U.S. Bank to Document Request No. 79, which asks for "Each U.S. Bank rule, policy, procedure, or guideline that relates to commercial lending and which was in effect any time between 2007 and 2012." (Kramer Decl., Ex. A at 3; Ex. E at 3.) Plaintiffs believe the job description most likely provides "guidelines" or "policies" with regard to how Mr. Boe was expected to carry out his responsibilities relating to commercial lending, which are especially important given Mr. Boe's high-ranking position and authority over U.S. Bank's commercial lending division. Because the job description falls within the scope of an existing request, and U.S. Bank has identified no other basis for declining to produce it, Plaintiffs ask that the Court compel the bank to do so now.

### D. Requests for Admission Relating to Peregrine and Wasendorf Fiduciary Duties

Finally, there are two responses to Plaintiffs' requests for admission about which the parties have reached an impasse. Both requests are set forth below:

> No. 26: Admit that Wasendorf owed fiduciary duties to Peregrine Financial Group Inc. customers, including in maintaining the customers' funds in CEA customer segregated funds accounts.

9

>No. 27: Admit that Peregrine Financial Group Inc. owed fiduciary duties to its customers, including in maintaining the customers' funds in CEA customer segregated funds accounts.

(Kramer Decl., Ex. C at 2.)

U.S. Bank sole objection to these requests is on the grounds that each one "improperly seeks to establish a legal conclusion." (Kramer Decl., Ex. D at 3.) During the meet and confer process, Plaintiffs pointed out that the requests are proper because they require the application of law to fact, as permitted under Rule 36(a)(1)(A). U.S. Bank disagreed, is standing on its objection, and the parties are at impasse. (Kramer Decl., Ex. E at 11.)

Rule 36 requests may seek to establish facts or "the application of law to fact". Fed. R. Civ. P. 36(a)(1)(A). The deciding factor is whether the request involves the facts of the particular case. *See Miller v. Holzmann*, 240 F.R.D. 1, 5 (D.D.C. 2006) ("[I]t is permissible to request an admission as to how a particular source of a legal obligation, such as a contract or a statute or regulation, applies to a given state of facts."). For example, in *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164, 2007 WL 3171768, at *5 (D. Kan. Oct. 29, 2007), the court overruled objections to requests that sought to establish matters with both a factual and legal component: "[The requests] merely seek to establish HCA Midwest's succession to contracts and whether Heartland meets certain requirements under federal laws, which are inquiries more of a factual than legal nature. Saint Luke's requests ask Heartland to admit that no state law required an identified Defendant to contract with Heartland and therefore directly relate to the facts of the case. ... None of the requests relate to "pure matters of law" or questions of law that are not related to the facts of this case." *Id*. at *5 (citations omitted). Similarly, in *S.E.C. v. Goldstone*, 300 F.R.D. 505, 526 (D.N.M. 2014), a request to admit that

certain transactions "constitute legal sales" under the SEC's definition was a permissible request seeking the application of law to facts, not a pure legal conclusion.

Here, Plaintiffs seek to confirm what should not be controversial: that under the facts of this case, Peregrine and its owner, Russell Wasendorf Sr., owed fiduciary duties to Peregrine's customers. Given that "the purpose of Rule 36 is to expedite trial by determining which issues are in genuine dispute," *Berry v. Federal Mut. Ins. Co.*, 110 F.R.D. 441, 443 (N.D. Ind. 1986), Plaintiffs' requests are a proper means of streamlining the issues for trial.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order U.S. Bank to produce all documents responsive to Plaintiffs' Requests for Production of Documents 79, 85, 99, 100, and 105, and order U.S. Bank to answer Plaintiffs' Requests for Admission 26 and 27.

Dated: February 13, 2015        /s/   Elizabeth A. Kramer

Daniel C. Girard
Amanda M. Steiner
David Stein
Elizabeth A. Kramer
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Merrill G. Davidoff
Michael C. Dell'Angelo
Jennifer MacNaughton
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604

*Co-Lead Counsel for Plaintiffs
and the Proposed Class*