**IN THE UNITED STATES DISTRICT COURT OF THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| )<br>)<br>)<br>**IN RE PEREGRINE FINANCIAL GROUP** )<br>**CUSTOMER LITIGATION** )<br>)<br>) | Case No. 12 C 5546<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge Daniel G. Martin |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs brought this class action concerning the July 2012 collapse of Peregrine Financial Group, Inc. ("PFG"), one of the country's largest futures commission merchants. PFG declared bankruptcy after its founder Russell Wasendorf, Sr. admitted to diverting over $200,000,000 in customer money from accounts at institutions that included Defendant U.S. Bank, N.A. ("the Bank" or "Defendant"). Wasendorf pled guilty to fraud and embezzlement, and is currently serving a 50-year sentence in federal prison. Plaintiffs also sued JPMorgan Chase Bank, N.A. because PFG maintained numerous accounts with that institution. On January 27, 2015, the District Court dismissed claims against JPMorgan Chase pursuant to an agreed settlement with the Plaintiffs. U.S. Bank promptly appealed the District Court's ruling to the Seventh Circuit.

Meanwhile, the remaining parties have proceeded through the discovery process before this Court. The Bank and Movants Mark Alexander, Robert Evans III, Marcus Ibrahim, Joe Martano, J.D. Sailer, together with Plaintiffs Patricia Benvenuto, Kirk Houghton, Brian Pannkuk, Guravaneet Randhawa, and Jordan Robinson, (collectively "Plaintiffs") have filed five discovery motions. The Trustee of PFG's Chapter 7 Bankruptcy

Estate ("Trustee") has also filed his own brief. The motions include 28 briefs that extend to over 1,200 pages. That is not unreasonable in this case, which involves complex allegations whose scope encompasses an exceptionally large number of documents. Indeed, the discovery disputes would be more numerous were it not for the professionalism that counsel for all parties have shown throughout the case. The Court has carefully reviewed the submissions and considered the parties' positions in full. To expedite matters, however, the Court outlines the parties' disputes only to the extent necessary to explain the basis of the Court's decision.

## I.  LEGAL STANDARD

Parties are entitled to conduct discovery on any matter that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information does not have to be admissible to be discoverable. It only needs to be "reasonably calculated to lead to the discovery of admissible evidence." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(1)). The party opposing discovery bears the burden of showing why discovery should be disallowed. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990). Discovery is ordinarily allowed even "[i]f there is a *possibility* that [it] may lead to information relevant to the subject matter of the action." *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *5 (N.D. Ill. April 8, 2010) (emphasis added).

## II.  DISCUSSION

### A.  U.S. Bank's Motion to Compel Answers to Interrogatories

The Bank asks the Court to require Plaintiffs to respond more fully to its

Interrogatory No. 7 and Interrogatory No. 9. Interrogatory No. 7 demands the following:

> Identify all transactions that you claim constituted a violation of the Illinois Fiduciary Obligations Act ["FOA"] . . . by U.S. Bank and identify all documents (including but not limited to correspondence, cancelled checks, and/or statements of account) related to or reflecting said transactions.

Interrogatory No. 9 asks:

> For each transaction you identified in your answer to Interrogatory No. 7, describe with particularity all facts and circumstances that you contend give rise to a violation of the [FOA] . . . by U.S. Bank.

Plaintiffs responded with a routine set of boilerplate objections, including a claim that the requests were unduly burdensome. They also restated a number of the allegations that were set out earlier in their pleadings. Plaintiffs later submitted a limited set of documents in response to Interrogatory No. 7 that identify some, but not, all of the transactions at issue. (Def.'s Mot. At Ex. E). The Bank claims that this only amounts to $33.7 million of the alleged $200 million that Plaintiffs seek to recover.

Plaintiffs' Second Amended Class Complaint alleges that the Bank violated its fiduciary duties under the FOA by permitting PFG to improperly deposit checks into an account ending in "1845" ("the 1845 Account"). Plaintiffs allege that these checks were made payable to PFG itself, thereby disregarding the fact that the 1845 Account was designed to hold other funds. Plaintiffs claim that the Bank acted in bad faith because (1) it had actual knowledge of PFG's improper acts, or (2) it "disregarded and refused to learn facts readily available to it that PFG was breaching its fiduciary duty and misappropriating customer funds." (Dckt. 169 at ¶¶ 334-41).

The parties begin by seeking to draw this Court into deciding how the substantive provisions of the Illinois FOA should be construed. The Bank claims that Plaintiffs must

demonstrate that it acted in bad faith when it processed each specific transaction that adds up to the $200,000,000 at issue in the case. Unhelpfully, the Bank's motion fails to cite a single Illinois case on this topic. It also fails to argue that Illinois courts would construe the FOA in the manner shown by the out-of-jurisdiction cases the Bank relies on. Plaintiffs claim that they will not carry such a burden at trial. Relying on *Crawford Supply Group, Inc. v. Bank of America, N.A.*, 829 F. Supp.2d 636 (N.D. Ill. 2011), they contend that the FOA does not require them to show that the Bank acted with knowledge concerning each transaction. *See id*. at 649 ("[B]ad faith can be shown where the bank suspects that the fiduciary is acting improperly and deliberately refrains from investigating in order . . . to avoid knowledge that the fiduciary is acting improperly.") (internal quotes and citation omitted). "In essence, the Act provides a defense for banks when a fiduciary misappropriates his principal's funds, unless the bank had actual knowledge of the fiduciary's misappropriation or knowledge of sufficient facts that its action in paying checks amounted to bad faith." *Geimer v. Bank of America, N.A.*, 784 F. Supp.2d 926, 932 (N.D. Ill. 2011) (internal quotes and citation omitted). The FOA defines "good faith," but does not address what is meant by "bad faith." 760 ILCS 65/1(2).

The Court respectfully disagrees with both parties' approach to this dispute. A motion to compel is not a proper vehicle for dragging this Court into deciding how the Illinois FOA should be construed. Discovery is never limited to the narrow scope of a legal claim. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."). Plaintiffs' allegations are important to the scope of discovery. However, they do not necessarily define the boundaries that separate what is

appropriate from what is too far afield for discovery purposes. The more important issue is how the parties themselves have carried out their burdens of showing what those boundaries ought to be. The Bank has the initial responsibility for explaining why Plaintiffs' responses are inadequate. *MSTG, Inc. v. AT&T Mobility, LLC*, 2011 WL 221771, at *6 (N.D. Ill. Jan. 20, 2011). That has been met here. The party opposing discovery always carries the burden of showing why the requested discovery is improper. *Kodish v. Oakbrook Terrace Fire Protection Dist*., 235 F.R.D. 447, 449-50 (N.D. Ill. 2006); *Golden Valley Microwave*, 132 F.R.D. at 207; *Stimeling v. Bd. of Educ. Peoria Public Schools Dist. 150*, 2010 WL 375337, at *2 (C.D. Ill. Jan 26, 2010).

The key issue therefore is the objections that Plaintiffs raise in their formal answer to the interrogatories. The parties' dispute over how the FOA should be construed is essentially an argument over whether answers to Interrogatories Nos. 7 and 9 would be relevant to the statute's requirements. Surprisingly, Plaintiffs do not raise a relevancy objection in their specific discovery answers. The Federal Rules are very clear that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Courts in this Circuit construe that to apply to document production as well. *Whitlow v. Martin*, 259 F.R.D. 349, 354 (C.D. Ill. 2009). Plaintiffs have not offered any explanation for not specifically objecting to Interrogatories Nos. 7 and 9 based on relevance.

That leaves Plaintiffs with the three objections stated in their answers. First, Plaintiffs attempt to incorporate their general objections. One of those objections does involve relevance. Plaintiffs fail to realize, however, that such broad objections are

unavailing. Rule 33(b)(4) states that "the grounds for objecting to an interrogatory must be stated *with specificity*." (emphasis added). Courts have expressed serious reservations on the efficacy of incorporating generalized objections to a specific request merely by referencing such broad claims. *See*, *e.g.*, *Avanta Intl. Tech., Inc. v. Hart Inercivic, Inc.*, 2008 WL 2074093, at *3 (S.D. Ill. May 14, 2008) ("Making general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied."). This Court has previously rejected such broad objections outright. *Cusic v. Glass Mountain Capital, LLC*, 2013 WL 10209048, at *1 (N.D. Ill. June 26, 2013) (citing *Buonauro v. City of Berwyn*, 2011 WL 2110133, at *1-2 (N.D. Ill. May 25, 2011)).

The Court reaches the same conclusion here. Plaintiffs' general objections include relevance together with other boilerplate claims that the requests are "vague, ambiguous, confusing, overly broad, vexatious, oppressive, calculated to harass, or unduly burdensome; or do not describe the information requested with reasonable particularity." (Pls.' Resp. at Ex. B, p. 4). It is well-established that such generalized boilerplate objections have no effect. Courts have repeatedly warned litigants who oppose discovery that their "burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitshubishi Motors Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006) (citing extensive cases); *United Auto. Ins. v. Veluchamy*, 2010 WL 749980, at *5 (N.D. Ill. March 4, 2010) (citing cases). Thus Plaintiffs have waived

relevance and all other general objections that are not stated in response to Interrogatories Nos. 7 and 9.

Plaintiffs also state that the Bank's interrogatories are improper because the Bank already has control over the information that it seeks. That is without merit. Such a response basically claims that the opposing party should be responsible for identifying the sources of its alleged wrongdoing. The Bank is not obligated to sift through the documents and information related to the 1845 Account to determine what Plaintiffs may rely on to substantiate their allegations.

Plaintiffs further claim that the Bank's interrogatories are overly burdensome. Their answer states that Plaintiffs would be required to consider "many thousands" of transactions, together with the documents associated with them. Plaintiffs expand on this to some degree in their response brief, stating that it could require a discovery response that would be hundreds or thousands of pages long. (Resp. at 9).

Unfortunately for Plaintiffs, this is inadequate. Federal Rule of Civil Procedure 26(b)(2)(C)(iii) allows a court to restrict the scope of discovery if the expense involved outweighs the likely benefit of production. Courts apply a proportionality test to determine whether discovery should be restricted. That standard considers "the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *In re IKB Deutsche*, 2010 WL 1526070, at *5.

The Bank anticipates this argument in its motion. Puzzlingly, Plaintiffs never address the issue in meaningful detail in their response. Claims of undue burdensomeness require a specific showing of what is involved. *Rawat v. Navistar Intl.*

7

*Corp.*, 2011 WL 3876957, at *11 (N.D. Ill. Sept. 1, 2011); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012) (denying the objection in the absence of a particularized demonstration). "The mere fact that [a party] will be required to expend a considerable amount of time, effort, or expense in answering the [request] is not a sufficient reason to preclude discovery." *Schaap v. Executive Inds., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990) (internal citation omitted). This Court does not set aside claims of undue burdensomeness lightly. Without a particularized showing, however, it has no choice but to find that Plaintiffs have not explained why discovery should be denied, or even modified, on this ground.

Plaintiffs further claim that the Bank has propounded premature contention interrogatories. The Bank concedes that both of its requests are contention interrogatories. However, an interrogatory is not immune from being answered simply because it is a contention interrogatory. "The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness." *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995). Courts have discretion to allow such interrogatories before discovery is complete. *Id*. The critical questions are whether compelling an answer would require multiple supplemental answers, or if it would prematurely commit a party to a position. *Id*. Contention interrogatories are permitted when answering them could contribute to clarifying the issues. *Fellowes, Inc. v. Aurora Corp. of Am.*, 2009 WL 1097063, at *1 (N.D. Ill. April 1, 2009) (citation omitted).

Neither party has addressed this issue adequately. Both parties discuss the matter in terms of whether or not the interrogatories should be answered at all. The more

pressing question for a contention interrogatory is whether it should be answered now or later. Plaintiffs do not address why answering Interrogatories Nos. 7 and 9 would unduly limit issues or prematurely commit them to a position. Instead, they rely on their brief claims concerning burdensomeness. This improperly conflates two separate issues. The Court is particularly concerned by Plaintiffs' failure to respond to the Bank's argument that these interrogatories do not just address liability; they also concern damages. *See generally United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 543-45 (N.D. Ill. 2005) (discussing contention interrogatories related to damages).

For its part, the Bank has not discussed why the interrogatory should be answered in full now. The Bank only addresses the issue in general terms. That is insufficient. "Any generalizations about the appropriate use and timing of contention interrogatories . . . cannot substitute for the specific analysis of the propriety of their use here and now[.]" *In re Arlington Heights Funds*, 1989 WL 81965, at *1 (N.D. Ill. July 7, 1989); *Ziemack*, 1995 WL 729295, at *2; *United States v. Educ. Mgt. LLC*, 2013 WL 3854458, at *20 (W.D. Pa. May 14, 2013) ("The party advocating for an early response to contention interrogatories bears the burden of justifying the request[.]").

The Court therefore reaches a middle ground. Plaintiffs have already provided a partial response to Interrogatory No. 7. This waives any objection related to this limited set of discovery answers. The Court can see no reason why Plaintiffs' objections to Interrogatory No. 9, which are identical to those asserted in Interrogatory No. 7, should prevent a similar result. Plaintiffs are directed to answer Interrogatory No. 9 for each of the transactions they identified in response to Interrogatory No. 7. They shall do so within 45 days of the issuance of this order. This does not mean that Plaintiffs will not be required

to answer both interrogatories in their entirety at a later date. The Court only finds that it cannot order a response now in light of the parties' current arguments. The Bank is given leave to reassert its motion on this ground at an appropriate time.

**B.    The Bank's Motion to Compel the Trustee's Compliance with Subpoena Duces Tecum**

The Bank seeks to enforce a January 28, 2015 subpoena duces tecum it served on Ira Bodenstein, the Chapter 7 Trustee for the Bankruptcy Estate of PFG. The subpoena was the latest in a complex series of events that the Court only briefly reviews. The Trustee earlier sued to enjoin this action. Plaintiffs and the Trustee settled that dispute through a Continuing Cooperation and Assignment Agreement ("Cooperation Agreement"), which required them to "provide each other all relevant, material PFG documents which have been identified as the result of their respective investigations[.]" They also entered into a Common Interest Agreement requiring them to share certain privileged information with one another.

After this suit was filed, the United States Commodity Futures Trading Commission ("CFTC") also filed suit against U.S. Bank in the Northern District of Iowa. The CFTC gathered approximately 2.7 million PFG documents as part of that suit. The Bank obtained those documents as part of the Iowa litigation. However, a protective order in that case required the Bank to destroy or return all confidential material within 60 days of the case's resolution. That date has now come and gone. The Bank sought permission from the Iowa court to modify the protective order and preserve the documents for use in this case. The Iowa court denied the Bank's motion.

By that point, the Bank had already served a subpoena duces tecum on the Trustee

in the CFTC case.  The Trustee objected to the subpoena's scope, but eventually provided a "data map" concerning documents in his possession.  The Bank identified portions of the documents to be searched with key terms.  The Trustee agreed that his responsive production would also serve to cover documents relevant to the instant litigation.  The Bank then added five new terms to the original requests.  It did not, however, explicitly agree not to seek additional documents if the need to do so arose.  The Bank eventually received 142,000 documents.

The Bank then served a second subpoena on the Trustee in the Northern District of Illinois while the motion to amend the protective order was pending before the Iowa court.  It this subpoena that is at issue here.  It sought two classes of documents: (1) accounting and bank records of PFG that relate to its calculation of customer segregated funds, and submissions to regulators reflecting those amounts, and (2) documents showing the Trustee's efforts to recover assets for the Bankruptcy Estate.  The Bank claims the second set of requests would reduce its potential liability.  The Bank has offered to pay reasonable costs related to this requested production.  The Trustee has refused to comply.

After much *sturm und drang*, and very considerable briefing, the Bank now states in its reply brief that its motion on this issue has been resolved pursuant to an agreement that it reached with the Trustee on February 27, 2015.  The Trustee has agreed to produce certain non-privileged emails and attachments sent to and from Brenda Cuypers, PFG's former Chief Financial Officer.  The Bank's motion on this issue is denied as moot.

The remainder of the Bank's motion concerns an extension of the discovery schedule so that additional depositions can be taken.  The parties argue about this point at great length.  The Court has already extended fact discovery through May 12, 2015 in

anticipation of the discovery that will be required on several fronts pursuant to this order. The Court will not make preliminary rulings on deposition notices that have not yet been issued. The parties are to proceed with whatever discovery they believe is necessary prior to the cutoff date. The Court will only enter the fray upon the submission of a motion to compel or a motion for protective order to limit further discovery. The Bank's motion is denied as moot.

### C. Plaintiffs' Motion to Determine the Sufficiency of Defendant's Responses

Plaintiffs submitted two sets of Requests for Admission pursuant to Fed. R. Civ. P. 36. The first set involved questions concerning a large set of documents that were referenced by an attachment to the requests. The attachment identified 524 categories of documents. Plaintiffs asked the Bank to (1) admit the "genuineness and authenticity" of each document, (2) admit that each document is a record of regularly-conducted business, and (3) each is also a statement by a party opponent under Fed. R. Evid. 801(d)(2). Some of the documents that the Bank turned over to Plaintiffs contained Bates prefixes of "USBNA" and "USBND." Plaintiffs' second set of requests asked the Bank to admit that these documents were authentic, business records, or statements of an opposing party.

Rule 36 states in relevant part that a party may serve requests to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to" either the "facts, the application of law to fact, or opinions about either," as well as "the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A) & (B). Rule 36 is not a discovery procedure. It only allows "parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree." *United States v. Kasuboski*, 834

12

F.2d 1345, 1350 (7th Cir. 1987).   The responding party must either admit the matter, specifically deny it, "or state in detail why the answering party cannot truthfully admit or deny it.  Fed. R. Civ. P. 36(a)(4).  Plaintiffs claim that the Bank failed to comply with these requirements.

The Court begins with the second set of requests.   Plaintiffs submitted three requests, each of which is a variation of the following:

> Admit that all documents produced by U.S. Bank in this litigation with the beginning Bates prefixes "USBNA" or "USBND" are genuine and authentic. If you admit that part of any such documents is genuine and authentic, but do not admit the same as to another part of the same document: (i) identify the document; and (ii) identify which portion you do not admit is genuine and authentic.

The Bank responded to each request with the simple statement "denies."  That is ordinarily all that Rule 36 demands.  The parties argue about the sufficiency of this answer by addressing the Bank's general objections to the requests.  Both sides claim that these objections either are, or are not, meritorious enough to protect the Bank from having to provide a more complete response to the second half of each request.

In reality, the issue is much simpler.  The problem involved in this dispute does not lie in the Bank's response, but in Plaintiffs' requests themselves.   Each of the three requests asks the Bank to admit only one thing – that "all" of the USBNA and USBND documents are genuine, are records of regularly-conducted business, or are statements of a party opponent.  The second part of each request is based on the supposition that the Bank *admits* the request as to some or all of the documents.  Only then is the Bank asked to respond in greater detail by identifying more detailed portions of each document.  ("If you admit . . . [then] identify . . .").

13

The Bank did not admit any part of the three requests. It denied them without further elaboration. That is all that was required. The plain language of each request only asked the Bank to respond further if it admitted that part of the documents were authentic, but denied that other parts of the same document were not. By denying that "all" documents were genuine, however, the Bank did not admit anything. Plaintiffs' requests are phrased in such a way that the Bank was entitled to provide a blanket response concerning the totality of the documents in question. Even if the Bank thought that some but not all of each set of documents were genuine, the opening sentence of the requests did not prevent the Bank from denying that "all" were not genuine. The Court has no doubt that this is not what Plaintiffs intended their requests to mean. But it is what they said. The Court cannot rewrite the requests or construe them to require something that is not stated.

The first set of requests presents more complex problems. Plaintiffs submitted three requests that asked whether the documents identified in attached Exhibit A were genuine, business activity records, or statements by a party opponent. Each request is variation of the following:

> Admit the genuineness and authenticity of each document identified in Exhibit A. Unless otherwise noted, all subsequent attachments to each document in Exhibit A are included in the request. If you admit that part of a document listed in Exhibit A is genuine and authentic, but do not admit the same as to another part of the same document: (i) identify the document; and (ii) identify which portion you do not admit is genuine and authentic.

Unlike the second set, these requests sought admissions concerning "each" document instead of grouping them together as "all" documents. The Bank prefaced its response to the requests with a series of general objections. Those are unavailing for the reasons discussed earlier. *See Novelty, Inc. v. Mt. View Marketing, Inc.*, 265 F.R.D. 370, 375 (S.D.

14

Ind. 2009) (stating that general objections, "whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all – and will not be considered.").

The Bank also included specific objections to each request for admission.  It claims that the requests are unduly burdensome because they require a response to 564 documents.  The number rises to 1,748 pages when the attachments to the documents are considered.  The Bank supports its position by relying on *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346 (N.D. Ill. 2014).  In *Tamas* the defendant propounded 460 requests to 64 discovery opt-in plaintiffs.  The court found the requests to be burdensome, but on different grounds than those that apply here.  The *Tamas* plaintiffs were individuals; the total number of requests ran to 29,440; they could not be readily be admitted or denied; and they were not designed to eliminate issues on which the parties disagreed.  *Id*. at 347-48.  None of those factors apply here.  This case involves claims up to $200,000,000; the Bank is a large, sophisticated corporate entity; and the case is highly document intensive.

Moreover, the Bank does not make a specific showing of what burdens or costs would be incurred.  As stated earlier, that is prerequisite for demonstrating undue burdensomeness.  The Court notes that much of the Bank's argument is premised on the assumption that the Bank would also be required to respond to the second set of requests. The Bank claims the USBNA and USBND documents would require it to respond to 33,092 requests.  The Court's order has resolved that problem.  The  first set of requests only includes 1,748 pages.  Nevertheless, the Bank complains that up to one-third of the documents in question were produced to Plaintiffs by parties or third-parties other than the Bank itself.  The Bank objects to being required to respond to the requests for this set of

documents. Plaintiffs do not respond to this contention in their reply. Since this Court has no way of knowing what these non-Bank documents involve, it finds that the Bank is only required to respond concerning those documents that it produced.

The Bank also claims that it should not have to answer the requests asking if any documents constitute statements by a party opponent or business records. The Bank claims this improperly requires it to draw legal conclusions. It is true that requests for admission cannot be used to establish a legal conclusion. *Katzman v. United States*, 2012 WL 601771, at *1 (N.D. Ill. Feb. 23, 2012). However, the Bank has not provided any authority to show that Plaintiffs' request involves anything other than the application of law to facts. Rule 36(a)(1)(A) permits requests concerning "facts, the application of law to fact, or opinions about either." A number of courts have permitted requests to admit that ask a party to apply the exceptions to the hearsay rule to documents, particularly business records under Fed. R. Evid. 803(6). *See, e.g.*, *Little Hocking Water Assn., Inc. v. E.I. DuPont De Nemours & Co.*, 2013 WL 1791083, at *4 (S.D. Ohio April 26, 2013); *Oakley v. McCabe*, 2007 WL 2752175, at *1 (S.D. Ill. Sept. 21, 2007). The Bank has not responded to Plaintiffs' reliance on these cases. In the absence of a such a response, the Bank is directed to respond to the request concerning the documents it produced to Plaintiffs.

Lastly, the Bank argues that it cannot respond to the first request asking it to admit the authenticity or genuineness of documents. The Bank relies on a somewhat tortured application of Fed. R. Evid. 901(a) to claim that it cannot determine that the documents in Exhibit A are "what the proponent claims it is." Fed. R. Evid. 901(a). The Court is unpersuaded. Requests to admit the genuineness of documents are exceedingly common.

Indeed, Rule 36(a)(1)(B) specifically mentions it as an appropriate inquiry. The Bank has not shown why the facts involved in this case differ from those that ordinarily obtain. "The Federal Rules of Civil Procedure contemplate that parties will, in good faith, admit the genuineness of documents when asked to do so, thereby doing away with the necessity of bringing in a custodian of records to establish the business records foundation." *Oakley*, 2007 WL 2752175, at *1. *See also John Paul Mitchell Sys. v. Quality King Dist., Inc.*, 106 F. Supp.2d 462, 471 (S.D.N.Y. 2000) ("The rule [901(a)] is flexible . . . about what serves to authenticate a document."). The Court can see no reason why the Bank should not respond to this request concerning those documents that it produced to Plaintiffs. If the Bank is unable to admit or deny the request concerning specific documents, Rule 36(a)(4) permits it to explain why it cannot do so. The Bank shall answer the requests within 30 days of the issuance of this order.

### D.  Plaintiffs' Motion to Compel Testimony

Plaintiffs also seek to compel the Bank to supplement testimony from its Rule 30(b)(6) witnesses. The Court forgoes a summary of the extensive negotiations concerning the Rule 30(b)(6) topics and witnesses that the parties have undertaken. Suffice it to say that eight witnesses have already testified, yielding 1,845 pages of deposition transcripts. Plaintiffs contend that the Bank's witnesses were unable to provide sufficient information on four of the 17 topics involved in the Rule 30(b)(6) depositions.

On June 23, 2014, Plaintiffs served a notice of deposition on the Bank pursuant to Rule 30(b)(6). The Rule provides that a party may name a business entity as a deponent. The requesting party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The business entity then has the duty to designate

one or more individuals to testify on its behalf. The designated witness can testify "not only to matters within his personal knowledge but also to matters known or reasonably available to the organization." *PPM Finance, Inc. v. Norandal USA, Inc*., 392 F.3d 889, 894-95 (7th Cir. 2004) (internal quotes and citation omitted). A designated Rule 30(b)(6) witness is thus not limited to her personal knowledge. She also "testifies vicariously for the corporation, as to its knowledge and perceptions." *Sara Lee Corp. v. Kraft Foods Inc*., 276 F.R.D. 500, 503 (N.D. Ill. 2011) (internal quotes and citation omitted). The Rule places the burden on the business entity to prepare its deponent to testify adequately, or to designate additional witnesses. *Smithkline Beecham Corp. v. Apotex Corp*., 2000 WL 116082, at *8 (N.D. Ill. Jan. 24, 2000).

### 1.    Topics 1 and 3

Plaintiffs' deposition notice identified Topic 1 as follows: "The location and accessibility of Documents that refer to PFG, Russell Wasendorf Sr., or his Affiliated Enterprises, including the extent to which U.S. Bank already searched for those documents." (Pls.' Mot. at Decl. of Norman Siegel, ¶ 4). Topic 3 involved "U.S. Bank's Document retention policies applicable to PFG's U.S. Bank accounts ending in 9434, 1845, 7467, the Wasenforf Construction account ending in 0329, and the loans provided by U.S. Bank's in connection with the construction of PFG's headquarters." (Id.).

The Bank designated Peggy Moore to respond to these inquiries. Plaintiffs refer the Court to a slew of post-deposition communications between the parties, making the issue unduly difficult to follow. Their briefs unhelpfully rehearse multiple details, only to state in Plaintiffs' reply that the sole remaining issue on Topics 1 and 3 is whether the Bank

should provide an additional witness to testify on backup protocols and processes for the Bank's Searchspace and Actimize computer systems.

The Bank suggests throughout its brief that this item of discovery is outside the scope of what Topics 1 and 3 included. The Bank cites, for example, out-of-jurisdiction caselaw for the proposition that a Rule 30(b)(6) request must designate the scope of inquiry with "painstaking specificity." (Resp. at 2). The plain language of the Rule contradicts such a claim. Rule 30(b)(6) states that the requesting party is only required to identify the topics for examination "with reasonable particularity." *See Alloc, Inc. v. Unilin Decor N.V.*, 2006 WL 2527656, at *1 (E.D. Wis. Aug. 29, 2006) ("A party need only designate, with reasonable particularity, the topics for examination."). Plaintiffs concede that the Bank has already produced a witness concerning the Searchspace system. The parties disagree on whether that witness should give additional testimony concerning the system's backup protocols for the Searchspace and Actimize systems. The Court concludes that the limited request that Plaintiffs identify in their reply brief is reasonably within the scope of Topics 1 and 3. The Bank is directed to provide a Rule 30(b)(6) witness to testify on the three topics listed on page 5 of the reply for Searchspace and Actimize.

### 2. Topic 4

Topic 4 identified the following issue: "U.S. Bank's internal computer systems for accessing PFG's U.S. Bank accounts ending in 9434, 1352, 7467, and the Wasendorf Construction account ending in 0329." Plaintiffs sought this information to determine where information and data like account histories had been created and maintained. The Bank produced Rita Stanley as its witness. Plaintiffs direct the Court to brief sections of her testimony to claim that she (1) had insufficient knowledge about the Bank's account

maintenance systems, (2) did not fully understand how certain computer reports were made over a seven-year period, and (3) did not know when specific systems were in place between 1992 and 1999.

The Court agrees with the Bank that these claims involve a level of specificity that is not clearly within the scope of Topic 4. Given the complex nature of the Bank's internal operations and the time period involved, the Bank's "internal computer systems" could include almost anything. More importantly, the Court sees no reason why the issue cannot be handled through interrogatories. *See Alloc*, 2006 WL 2527656, at *1 (noting that interrogatories can be more appropriate than a Rule 30(b)(6) deposition). Plaintiffs only identify a limited scope of inquiry. They are given leave to submit up to five interrogatories to the Bank on the topics they claim Ms. Stanley was not sufficiently prepared to explain.

The Court does not address the issue in detail because wading into specifics could implicate an unknown range of new issues. The parties are far more familiar with the Bank's complex computer systems than the Court. Plaintiffs are thus directed to fashion their interrogatories by applying common sense, and by limiting the issues to the specific topics identified in the motion. They may not inquire into any matter not mentioned in their discussion of Topic 4. Plaintiffs are to guard against presenting overly broad inquiries. The Bank is directed to provide clear and adequate answers. The Court will strongly disfavor any non-compliance with these guidelines. Plaintiffs shall submit their interrogatories within seven days of the issuance of this order. The Bank shall respond within 30 days of receiving Plaintiffs' requests.

### 3.   Topic 7

Topic 7 called for "U.S. Bank's policies and procedures in effect at the Cedar Falls

and Cedar Rapids branches regarding fraud detection and prevention for accounts of the same type as PFG's U.S. Bank accounts ending in 9434, 1845, 1352, and 7467, and the Wasendorf Construction account ending in 0329." The Bank designated three deponents. Rita Stanley testified for branch-level operations, policies, and procedures related to fraud detection and prevention. Nathan Tepe and Leslie Ragan were designated for non-branch money laundering policies and procedures, as well as demand deposit account policies.

The Bank claims that these topics are no longer relevant in light of the District Court's ruling in September 2014 that disposed of the negligence allegations. Plaintiffs take serious issue with this claim in their reply, thereby redirecting the discussion from the topics at hand to the relevance issue. These arguments are misdirected. Setting aside the fact that the Bank cannot make such a complex argument in one sentence (which it does), the parties misconstrue how relevance applies here. Discovery is never limited to the narrow scope of legal claims. *See Oppenheimer*, 437 U.S. at 351 ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."). Relevance is construed differently during discovery than it is at trial. Discovery is ordinarily permitted even "[i]f there is a *possibility* that [it] may lead to information relevant to the subject matter of the action." *In re IKB Deutsche*, 2010 WL 1526070, at *5 (emphasis added). The Court cannot reasonably find that Plaintiffs' requests are so far afield that there is simply no possibility that they meet this liberal standard.

Plaintiffs argue that Rita Stanley's testimony was insufficient because she could not answer questions about fraud detection procedures for branch-level employees like relationship managers and assistant relationship manager. In support, they cite a bare 17

lines from the 412-plus pages of her transcript. Plaintiffs fail to explain in any way what a "relationship manager" is, or why such an individual falls within the scope of what Stanley was designated to explain. Topic 7 only involved policies related to "accounts." Plaintiffs overlook that Topic 5 covered the Bank's personnel. It required the Bank to designate an individual to testify on "the official, written job descriptions and responsibility descriptions for, and records or descriptions of formal training provided to, U.S. Bank relationship managers and assistant relationship managers" in the Iowa branches concerning PFG and Wasendorf accounts. (Def.'s Resp. at Ex. B). Plaintiffs have not explained in sufficient detail why they could not have sought the requested information from the person designated for Topic 5. The Court will not order a renewed deposition based on the 17 transcript lines that Plaintiffs cite.

Plaintiffs further complain that Leslie Ragan was unable to testify fully on various fraud prevention issues. The Court does not address the matter because the Bank does respond to this claim in their brief. That waives any objection the Bank may have had concerning Ms. Ragan. The motion is granted on this point.

Plaintiffs contend that Nathan Tepe was unable to testify on certain policies that governed the PFG accounts, or to provide sufficient information about the Bank's procedures. The Bank points out, however, that the parties negotiated away any requirement that the Topic 7 designees would be required to testify on PFG's accounts. As written, Topic 7 only covers policies and procedures "for accounts *of the same type* as PFG's." (emphasis added). It is, frankly, difficult to understand why the parties would have decided to eliminate testimony concerning PFG's accounts themselves. Nevertheless, Plaintiffs do not challenge the Bank's interpretation of Topic 7 in their reply. The Court

therefore agrees that testimony on PFG's specific accounts falls outside the scope of Topic 7's language.  Since the Bank only raises this issue in relation to Tepe's testimony, the Court limits its conclusion to Tepe alone, not the other Topic 7 designees.

The Bank contends that Tepe answered "many" of the questions posed to him.  The relevant issue is whether he answered all of them properly.  The Court finds that he did not.  Even the questions that the Bank cites in its brief were not fully answered.  The Court's own review of the deposition transcript also shows that the Bank's counsel tried to limit the scope of Tepe's testimony by claiming that testimony on a document concerning the monitoring of account activity fell outside the scope of Topic 7.  The Bank's counsel stated that Tepe's answer would only be his personal opinion, not the Bank's official statement.  That objection is overruled.  A Rule 30(b)(6) deponent testifies both on personal knowledge and information reasonably known to the business entity.  The Court sees no reason why the document at issue – the Bank Operations Procedure Manual – was not within the topic's scope.  (Pls.' Mot. at Ex. 1, Ex. D pp. 202-03).

Plaintiffs' motion is granted concerning Tepe.  Testimony is limited to the questions in Tepe's deposition that Plaintiffs specifically identify in their motion.  The Court encourages the parties to consider using interrogatories to clarify the remaining issues.  It will not order them to do so because the Bank does not request such a remedy concerning Tepe.  The parties should move forward with supplementary depositions as soon as possible.

**E.      Plaintiffs' Motion to Compel U.S. Bank's Production of Documents and to Determine the Sufficiency of Objections to Requests for Admission**

**1.      Requests for Admission**

Plaintiffs dispute the Bank's response to two requests for admission.  The are stated as follows:

> No. 26:   Admit that Wasendorf owed fiduciary duties to Peregrine Financial Group Inc. customers, including in maintaining the customers' funds in CEA customer segregated funds accounts.

> No. 27:   Admit that Peregrine Financial Group Inc. owed fiduciary duties to its customers, including in maintaining the customers' funds in CEA customer segregated accounts.

The Bank refused to answer the requests on the ground that they called for a legal conclusion.  As noted earlier, Rule 36 does not require a party to give legal conclusions. It does obligate the respondent to admit or deny a request that calls for the application of law to facts.

The Bank correctly states that the issue of whether a fiduciary duty exists is a question of law under Illinois law.  Rule 36's requirements would not be met had Plaintiffs merely asked the Bank to admit or deny that Wasendorf or PFG had a fiduciary duty in general.  But that is not what the requests state. Plaintiffs are asking if these parties had a fiduciary duty to the customers of various accounts implicated in this dispute.   That involves an application of law to facts that are inextricably tied to the case.  Courts have found that requests to admit concerning fiduciary duties are proper when they ask the respondent to apply the law on that topic to the facts of the case at hand.  *See*, *e.g.*, *In re S.W. Bach & Co.*, 2010 WL 681000, at *4 (Bankr. S.D.N.Y. Feb. 24, 2010) ("Requests for

Admissions that a party owed fiduciary duties to another have been considered proper requests as an application of law to facts relevant to the case[.]") (internal quote and citation omitted); *First Options of Chicago, Inc. v. Wallenstein*, 1996 WL 729816, at *3 n. 5 (E.D. Pa. Dec. 17, 1996) (requiring a response to the request, "From October 19, 1987 to October 31, 1987, Mr. Wallenstein owed a fiduciary duty to the creditors of MKI to protect corporate assets from wrongful distribution to Manuel Kaplan"). The Court agrees with these analyses. The Bank is required to respond to both requests for admission within 30 days of the issuance of this order.

### 2. Document Requests

Plaintiffs also seek to compel the Bank to respond to five document requests. The Court addresses each request in turn.

### Request No. 79

Plaintiffs asked the Bank to turn over "each U.S. Bank rule, policy, procedure, or guideline that relates to commercial lending and which was in effect at any time between 2007 and 2012." Plaintiffs claim that the Bank should have produced the job description for its Vice-President of Commercial Lending, Doug Boe. The Bank explains that no such document exists. The Court accepts the veracity of this response. A court cannot compel a party to turn over what does not exist. *Am. Needle, Inc. v. New Orleans*, 2012 WL 4327395, at *8 (N.D. Ill. Aug. 17, 2012). Moreover, Boe's job description does not fall within the scope of Plaintiffs' request for rules, policy, and guidelines.

### Request No. 85

Plaintiffs asked for all communications on or after July 2012 that referenced the

25

implementation or "contemplat[ion] of the Bank's rules, policies, or procedures "and the [PFG] collapse or related events." The Bank objected on the ground that the request was irrelevant because it sought documents after the probative period at issue in Plaintiffs' underlying allegations. The Bank correctly stated that subsequent remedial measures are not admissible at trial. The Bank also asserted the attorney-client privilege and the work product doctrine.

The Bank must answer the request. The Court has already explained at several points that relevance is construed more broadly during discovery than it is at trial. Even if Request No. 85 involves subsequent remedial measures – and the Bank does not renew that claim in its response – that does not make it irrelevant for discovery purposes. Nor does the fact that the request does not match Plaintiffs' current allegations with exact precision make it non-discoverable. The Bank's reliance on strict definitions of what constitutes liability is not determinative. Plaintiffs believe that it is possible the requested documents could lead to evidence that the Bank recognized that its own policies and procedures were commercially unreasonable. That is really all that the liberal standard for discovery requires.

The parties do not suggest that the Bank provided a privilege log for Request No. 85 or other disputed requests that involved claims of privilege. If the Bank continues to rely on its privilege objections, it must produce a log that properly accounts for the documents it seeks to protect. A party must state all of its objections when responding to discovery requests. The failure to do so can result in a wavier of the objection. *Autotech Tech. Ltd. Psp. v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006). A party must also provide a privilege log under Rule 26 when it withholds documents based on a privilege.

26

The log must identify the documents at issue, the privilege relied on, and must describe the subject matter with details that "will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). *See also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). The Bank is directed to provide an adequate log as part of its discovery response.

### Request No. 105

This request asked for documents "irrespective of when they were created, that relate to best practices, industry standards, or customs for maintaining CEA customer segregated funds accounts or other accounts held by fiduciaries as such." The Bank again raised the relevance and privilege objections. Notwithstanding its objections, the Bank also agreed to turn over responsive documents related to CEA customer segregated funds created or obtained by the Bank prior to July 9, 2012.

The Bank is not required to respond more fully to this request. Plaintiffs have not discussed, or even acknowledged, the Bank's partial production. The Court will not reach the remaining issue concerning industry standards after July 2012 on its own. Industry standards are broader and more removed from the relevant issues than the documents that Plaintiffs sought in Request No. 85. Plaintiffs were required to explain why it is possible that such documents could lead to other evidence that would relevant and admissible to the allegations in this dispute. It is far from clear to the Court why that would be the case.

### Request Nos. 99 and 100

Plaintiffs propounded the following requests concerning the Bank's potential

recognition of misconduct related to PFG's accounts prior to the collapse:

> No. 99:     All internal referral forms (IRFs) drafted or completed by a U.S. Bank employee, and the Documents gathered in the process of creating the IRFs, that relate to Wasendorf, [PFG], or any other Wasendorf controlled entity.

> No. 100:   All internal suspicious activity reports (ISARs or forms serving the same function as ISARs but titled differently) drafted or completed by a U.S. Bank employee, and the communications related to and Documents gathered in the process of creating the ISARs or similar reports, that relate to Wasendorf, [PFG], or any other Wasendorf-controlled entity.

The Bank responded by claiming that it was precluded from providing an answer under 31 U.S.C. § 5318(g)(2)(A)(i) and 12 C.F.R. § 21.11(k)(1).  That statute provides that:

> If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any authority, reports a suspicious transaction to a government agency –

> (i) neither the financial institution, director, officer, employee, or agent of such institution (whether or not any such person is still employed by the institution), nor any other current or former institution or other reporting person, may notify any person involved in the transaction that the transaction has been reported.

The statute and its implementing regulations "establish an absolute prohibition on financial institutions from disclosing to third parties information about the filing of a SAR." *BizCapital Bus. v. Comptroller of the Currency*, 467 F.3d 871, 873 n.3 (5th Cir. 2006).  This creates a "discovery and evidentiary privilege that may be invoked by a bank in order to avoid producing a SAR during the course of a civil proceeding."  *In re Whitley*, 2011 WL 6202895, at *3 (Bankr. M.D.N.C. Dec. 13, 2011) (citing *Gregory v. Bank One*, 200 F. Supp.2d 1000, 1003 (S.D. Ind. 2002)).  That said, other courts have determined that supporting documentation related to a SAR remains discoverable.  *United States v. Holihan*, 248 F. Supp.2d 179, 187 (W.D.N.Y. 2003).  The regulation that the Bank cites in

its discovery response explicitly states that the statute must not be construed to prohibit the disclosure of "the underlying facts, transactions, and documents upon which a SAR is based[.]" 12 C.F.R. § 21.11(k)(1)(ii)(2). Courts decide what supporting documents are discoverable and what are protected based on the reasons why they were first created. If they were made in the ordinary course of business, they are discoverable; if they were created in connection with a bank's duty to submit a SAR, they are privileged. *First Am. Title Ins. Co. v. Westbury Bank*, 2014 WL 4267450, at *2 (E.D. Wis. Aug. 29, 2014).

Unfortunately, the Bank fails to address this issue at all. It relies only on an email sent to Plaintiffs' counsel stating that no relevant document exists. Unlike Request No. 79, the Court does not find that this response fully resolves the issue. The email only refers to SARs and IRFs that were drafted or completed by a Bank employee. But Plaintiffs' requests are slightly broader than that. They also seek "communications related to and Documents gathered in the process of created" suspicious activity reports. It is possible that the Bank began an activity report without finishing it. That could implicate further documents that Plaintiffs seek to retrieve. The Court takes no position on whether such a scenario is probable. Instead, the Bank is directed to provide a further response that addresses this possibility and to respond to the full scope of Request Nos. 99 and 100. The Bank is directed to provide all of its responses connected with Plaintiffs' motion within 30 days of the issuance of this order.

### III.  CONCLUSION

Defendant U.S. Bank's Motion to Compel Compliance with Subpoena Duces Tecum and to Modify Scheduling Order [293] is denied. U.S. Bank's Motion to Compel Answers to Interrogatories [306] is granted in part. Plaintiffs' Motion to Determine the Sufficiency

of Responses and Objections [311] is granted in part.  Plaintiffs' Motion to Compel

Testimony [314] is granted.  Plaintiffs' Motion to Compel Production of Documents and to

Determine the Sufficiency of Objections [323] is granted in part.


ENTERED:


_____
                DANIEL G. MARTIN
            United States Magistrate Judge

Dated: March 20, 2015.