# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into on June 18, 2015, by and among the following parties acting by and through their respective undersigned counsel: (i) Ira Bodenstein (the "Trustee"), not personally, but as Chapter 7 Trustee for the estate of Peregrine Financial Group, Inc. ("PFG") in the proceeding captioned *In re Peregrine Financial Group, Inc.*, Case No. 12-B-27488 (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), (ii) U.S. Bank National Association ("U.S. Bank") and (iii) Brian Pannkuk, Jordan Robinson, Joe Martano, Marcus Ibrahim, William Robert Evans, III, Gurvaneet Randhawa, and Patricia Benvenuto, as well as any additional class representative plaintiffs as are appointed or may be appointed in the future by the District Court in the Customer Class Action (as defined herein) (collectively, the "Customer Representative Plaintiffs") by and through their respective counsel in the Customer Class Action acting on their behalf, (collectively, the "Parties," or singularly, "Party").

## BACKGROUND

WHEREAS, on July 10, 2012 (the "Petition Date"), PFG filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, the Trustee is the duly appointed chapter 7 trustee for PFG's bankruptcy estate (the "Estate");

WHEREAS, on or about August 7, 2012, October 31, 2012, April 3, 2013 and July 2, 2013, the Bankruptcy Court issued orders authorizing the Trustee to issue subpoenas for the production of documents and/or the examination of witnesses relevant to his investigation of the acts, conduct, property, and liabilities of PFG, the operation of PFG's business, and any other matter relevant to the Bankruptcy Case;

1

WHEREAS, beginning in August 2012 and from time to time thereafter, the Trustee issued requests for certain documents and other information to U.S. Bank, which had certain banking relationships with PFG and its affiliates, and at which PFG maintained certain of its proprietary and customer segregated accounts and PFG's founder, Russell Wasendorf Sr., maintained various personal and non-PFG related business accounts;

WHEREAS, U.S. Bank, in cooperation with the Trustee's investigation and in response to such requests, produced certain data, documents and other information;

WHEREAS, the Customer Representative Plaintiffs and other customer plaintiffs have brought several class actions and individual lawsuits in the District Court relating to PFG, including for example: *Power Vanguard Ltd., et al. v. Wasendorf, et al.*, Case No. 12-cv-05727 (N.D. Ill.); *Sailer, et al., v. U.S. Bank, N.A.*, Case No. 12-cv-06476 (N.D. Ill.); *Wolinsky v. Wasendorf, et al.*, Case No. 12-cv-05624 (N.D. Ill.); *Ibrahim v. Wasendorf, et al.*, Case No. 12-cv-06137 (N.D. Ill.); *Alexander v. Wasendorf, et al.*, Case No. 12-cv-6390 (N.D. Ill.); *Modi v. Wasendorf, et al.*, Case No. 12-cv-06985 (N.D. Ill.); and *Evans v. Wasendorf, et al.*, Case No. 1:12-cv-07365 (the "Representative Complaints");

WHEREAS, by orders dated August 10, 15 and 27, 2012 and October 5, 2012, the District Court variously consolidated the Representative Complaints under the caption *In re Peregrine Financial Group Customer Litigation,* 12-cv-5546, appointed the Customer Representative Plaintiffs as interim lead plaintiffs and appointed the law firms of Berger & Montague, P.C. and Girard Gibbs LLP to serve as interim Co-Lead Counsel for the classes proposed in the above-referenced actions under Federal Rule of Civil Procedure 23(g) in the Customer Class Action, responsible for the tactical management and coordination of all legal

work done on behalf of the proposed class and having joint authority to render final determinations as to strategic decisions on behalf of the proposed class;

WHEREAS, on December 21, 2012, the Customer Representative Plaintiffs filed, pursuant to a schedule set by the District Court in the Customer Class Action, their Consolidated Amended Class Action Complaint against Russell Wasendorf Sr., Russell Wasendorf Jr., U.S. Bank and JPMorgan Chase Bank, N.A. ("JPMorgan") in the Customer Class Action (as amended by any subsequently-filed complaint, the "Consolidated Amended Class Action Complaint"), which asserted claims against U.S. Bank for fraud by omission, violation of the Illinois Fiduciary Obligations Act, negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and aiding and abetting conversion;

WHEREAS, on March 7, 2014, the Customer Representative Plaintiffs reached a settlement with JPMorgan and the District Court granted final approval of the JPMorgan Settlement on January 27, 2015;

WHEREAS, on September 25, 2014, the District Court denied in part and granted in part U.S. Bank's motion to dismiss the Customer Representative Plaintiffs' Second Consolidated Amended Class Action Complaint;

WHEREAS, on January 7, 2015, U.S. Bank entered into a Consent Agreement in *CFTC v. U.S. Bank, N.A.*, No. 6:13-cv-02041 (N.D. Iowa), with the Commodity Futures Trading Commission (the "CFTC") pursuant to which it agreed to pay $18,000,000 to settle claims alleged against it by the CFTC that were substantially similar to those asserted by the Customer Representative Plaintiffs in the Customer Class Action;

WHEREAS, the Parties engaged in extensive discovery including the depositions of approximately twenty individuals, including U.S. Bank employees, PFG employees, Plaintiffs

and National Futures Association representatives; U.S. Bank produced and Plaintiffs' counsel reviewed more than 32,000 documents; Plaintiffs' counsel reviewed approximately 100,000 documents produced by the Trustee and searched more than 1,000,000 documents produced by the Trustee and various other third parties including the Commodity Futures Trading Commission, the National Futures Association, the Receiver appointed for Russell Wasendorf Sr. and his non-PFG related businesses, Russell Wasendorf Jr., JP Morgan and Veraja-Snelling & Company;

WHEREAS, on May 5, 2015, Customer Representative Plaintiffs filed their Third Consolidated Amended Class Action Complaint, in which they asserted a new claim against U.S. Bank pursuant to the Commodity Exchange Act. On May 6, 2015, U.S. Bank answered the Third Consolidated Amended Class Action Complaint;

WHEREAS, the Trustee, the Customer Representative Plaintiffs, and U.S. Bank have engaged in extensive arm's-length negotiations in an attempt to achieve a resolution of any and all asserted or potential claims against U.S. Bank in the Bankruptcy Case and the Customer Class Action;

WHEREAS, the Trustee has concluded, after careful consideration and an extensive investigation, that the Settlement on the terms set forth herein is an appropriate and reasonable exercise of his business judgment and is in the best interests of the Estate and PFG's customers and creditors;

WHEREAS, the Customer Representative Plaintiffs, through Co-Lead Counsel, have thoroughly investigated the claims that have been or could have been asserted against U.S. Bank in the Customer Class Action, including: reviewing documents and information produced by U.S. Bank, JPMorgan, the Commodity Futures Trading Commission, Russell Wasendorf Jr.,

Veraja-Snelling & Company, the National Futures Association, and the Trustee, among others, to the Customer Representative Plaintiffs in the Customer Class Action; conducting depositions of corporate representatives and employees of U.S. Bank, the National Futures Association, Veraja-Snelling & Company and former employees of PFG, including Russell Wasendorf Sr., Russell Wasendorf Jr., Susan O'Meara, and Brenda Cuypers; reviewing documents and transcripts of depositions conducted in *CFTC v. Peregrine Financial Group, Inc. et al.*, 1:12-cv-05383 (N.D. Ill.); reviewing documents and other materials U.S. Bank previously produced to the Trustee pursuant to his examination authority; meeting with certain former employees of PFG, employees of JPMorgan and various professionals employed by the Trustee; analyzing the relevant evidence; meeting with various consulting experts regarding the relevant evidence; and researching the applicable law with respect to such claims and the potential defenses thereto;

WHEREAS, based upon their investigation, the Customer Representative Plaintiffs and Co-Lead Counsel have concluded that the terms and conditions of the Settlement (as defined herein) are fair, reasonable and adequate, and in the best interests of the Customer Representative Plaintiffs and the other members of the Settlement Class (as defined herein);

WHEREAS, based on the Customer Representative Plaintiffs' oversight of the prosecution of this matter along with the input of Co-Lead Counsel, the Customer Representative Plaintiffs have agreed to settle the claims of the Settlement Class on the terms set forth in this Agreement, after considering (a) the substantial benefits that the members of the Settlement Class will receive from the Settlement, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Agreement;

WHEREAS, U.S. Bank expressly denies any fault, liability, or wrongdoing whatsoever in connection with the operation, maintenance or oversight of any PFG customer segregated

accounts, with any transfer or other transaction from or relating to any PFG customer segregated account, or with any other matter relating to PFG, whether asserted (or whether any such fault, liability, or wrongdoing could have been asserted) in the Bankruptcy Case, the Customer Class Action, or otherwise, including any of the allegations in the Third Consolidated Amended Class Action Complaint;

WHEREAS, U.S. Bank filed claim number 13451 in the Bankruptcy Case in the amount of $6,662,505.38 (the "U.S. Bank Claim");

WHEREAS, this Agreement shall in no event be construed as or deemed to be evidence of or an admission or concession by the Trustee or the Customer Representative Plaintiffs of any infirmity in the Released Plaintiffs' Claims (as defined herein) or the merit of any potential defenses thereto;

WHEREAS, this Agreement shall in no event be construed as or deemed to be evidence of an admission or concession on the part of U.S. Bank or any of the Released Defendants (as defined herein) with respect to any claim or of any fault, liability, wrongdoing or damage whatsoever, and U.S. Bank expressly denies any fault, liability, or wrongdoing in connection with the Released Plaintiffs' Claims;

WHEREAS, notwithstanding the foregoing, the Parties have agreed to enter into this Settlement to avoid the costs and uncertainty of potentially burdensome and protracted litigation in the Customer Class Action;

NOW THEREFORE, in consideration of the mutual promises, covenants, agreements, and releases set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## <u>DEFINITIONS</u>

1.      The Parties incorporate the foregoing recitals as if restated herein.

2.      In addition to the defined terms above, the following capitalized terms (and those defined hereafter), as used in this Agreement, shall have the meanings specified below:

a.      "4d Customers" means all former customers of PFG with accounts opened for the purpose of trading futures or options on futures on a U.S. futures exchange under Section 4d of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*, and 17 C.F.R. § 1.20.

b.      "30.7 Customers" means all former customers of PFG with accounts opened for the purpose of trading futures or options on futures contracts traded on foreign boards of trade in accordance with 17 C.F.R. § 30.7.

c.      "Administration Costs" means the costs, fees, and expenses, other than Notice Costs, that are incurred in connection with administering the Settlement, including the costs, fees, and expenses incurred in the distribution of funds from the Net Settlement Fund. Administration Costs will be deducted from the Settlement Fund after the Effective Date.  No Party shall be responsible for paying such Administration Costs.

d.      "Allowed Claim" means a Claim: (a) timely filed against PFG in the Bankruptcy Case by the applicable bar date established by the Bankruptcy Court that is no longer subject to objection in the Bankruptcy Case; or (b) that is allowed in the Bankruptcy Case (i) by a Final Order or (ii) by an agreement between the holder of such Claim and the Trustee.

e.      "Bankruptcy Approval Order" means the Final Order, substantially in the form attached hereto as Exhibit A (or in another form and substance acceptable to all of the Parties), to be entered by the Bankruptcy Court approving the Settlement and authorizing the execution, delivery and performance of this Agreement by the Trustee.

f.      "Barred Defendant" is defined in Paragraph 21 hereof.

g.      "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C.
§§ 1332(d), 1453, and 1711-1715.

h.      "CFTC Settlement" means the settlement set forth in the Consent Order
entered February 4, 2015 in *CFTC v. U.S. Bank, N.A.*, No. 6:13-cv-02041 (N.D. Iowa).

i.      "Claims" means any and all manner of claims, demands, rights, actions,
potential actions, causes of action, liabilities, duties, damages, losses, diminutions in value,
obligations, judgments, decrees, matters, issues, suits and controversies of any kind or nature
whatsoever, whether known or unknown, contingent or absolute, liquidated or not liquidated,
accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not
apparent, foreseen or unforeseen, matured or not matured, which now exist or previously existed,
including any claims arising under federal, state or foreign law, common law, bankruptcy law
(including all claims as that term is defined in the Bankruptcy Code), statute, rule or regulation,
or agreement, whether individual, class, direct, derivative, representative, on behalf of others,
legal, equitable, regulatory, governmental or of any other type or in any other capacity.

j.      "Claim Notice" means the "Notice of Proposed Settlement of Class
Action," which is to be sent to members of the Settlement Class substantially in the form
attached hereto as Exhibit B-1 and B-2 or as directed by the District Court.

k.      "Co-Lead Counsel" means Michael Dell'Angelo of Berger & Montague,
P.C. and Daniel C. Girard of Girard Gibbs LLP who have been appointed interim lead counsel
on behalf of the Customer Representative Plaintiffs pursuant to Fed. R. Civ. P. 23(g).
References herein to work performed by Co-Lead Counsel includes work undertaken at the
direction of Co-Lead Counsel performed by the law firms designated as Plaintiff's Executive

Committee in the District Court's October 5, 2012, Order as modified by its April 22, 2013 Order.

l.      "Contribution Claims" is defined in Paragraph 21 hereof.

m.      "Customer Class Action" means all actions brought, or that in the future may or could be brought, by or on behalf of former or present customers of PFG, which have been, or in the future may be, consolidated under the caption *In re Peregrine Financial Group Customer Litigation*, Case No. 12-CV-5546 (N.D. Ill.).

n.      "Customer Representative Plaintiffs Attorneys' Fees Payment" means any award of attorneys' fees or reimbursement of costs or expenses in the Customer Class Action, awarded pursuant to Fed. R. Civ. P. 23 by the District Court.

o.       "Distribution Taxes" means (i) all federal, state and/or local taxes of any kind on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by the Fund Administrator in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).  Any Distribution Taxes will be paid from the Settlement Fund.  No Party shall be responsible for paying such Distribution Taxes.

p.      "Effective Date" is defined in Paragraph 28 hereof.

q.      "Fee and Expense Waiver" means U.S. Bank's voluntary and conditional waiver of its right to seek reimbursement of any attorneys' fees and/or expenses actually incurred by or on behalf of U.S. Bank in the Bankruptcy Case or in the Customer Class Action.

r.      "Final Order" with respect to any order or judgment, including the Judgment, shall mean an order or judgment of the pertinent court, as entered on the docket in the pertinent case, which has not been reversed, stayed, modified or amended, and as to which the

time to appeal or seek certiorari has expired, and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought. Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times. Notwithstanding the foregoing, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to attorneys' fees, costs, or expenses, or the Plan of Allocation, shall not in any way delay or preclude the Judgment from becoming Final.

        s.     "JPMorgan Settlement Appeal" means U.S. Bank's appeal of the Order at Docket 302 in the Customer Class Action, styled *Brian Pannkuk, et al v. U.S. Bank National Association*, 15-1378 (7th Cir.).

        t.     "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit C, to be entered by the District Court approving the Settlement, or an alternative judgment entered by the District Court approving the Settlement that is not substantially in the form of Exhibit C but does not result in any Party terminating the Settlement pursuant to Paragraph 29 or Paragraph 30 of this Agreement.

        u.     "Net Settlement Fund" means the Settlement Fund less: (i) any Distribution Taxes; (ii) Notice Costs; (iii) Administration Costs; and (iv) any Customer Representative Plaintiffs Attorneys' Fees Payment and service awards; provided that if, under the terms of this Agreement, the Net Settlement Fund is to be disbursed from the Settlement Fund Account to Co-Lead Counsel or the Trustee for distribution to Settlement Class Members before a Final Order has established the amount of any Customer Representative Plaintiffs

Attorneys' Fees Payment and service awards, the Net Settlement Fund shall be calculated using the total amount of Customer Representative Plaintiffs Attorneys' Fees Payment and service awards that have been requested from the District Court.

v.   "Notice Costs" means the costs, fees and expenses that are incurred in connection with providing notice to the Settlement Class pursuant to Fed. R. Civ. P. 23(c)(2). Any Notice Costs incurred prior to the Effective Date will be paid from the Settlement Fund.  No Party shall be responsible for paying such Notice Costs.

w.   "Opt-Out Contingency Agreement" is defined in Paragraph 30 hereof.

x.   "Person" means any natural person, corporation, limited liability company, trust, business trust, joint venture, association (including any national or state banking association), company, governmental authority or other entity.

y.   "Plan of Allocation" means the proposed plan of allocation for the Net Settlement Fund set forth in Exhibit D hereto or such other plan of allocation as the District Court shall approve.

z.   "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit E (or in another form and substance acceptable to all of the Parties), to be entered by the District Court upon and after appropriate notice and opportunity for a hearing, preliminarily approving the Settlement and directing notice be provided to the Settlement Class, which order shall:  (i) stay, pending final determination of whether the Settlement should be approved by the District Court or further order of the District Court, all litigation of claims and related discovery between the Customer Representative Plaintiffs and members of the Settlement Class on the one hand and the Released Defendants on the other, and (ii) enjoin, pending final determination of whether the Settlement should be approved or further order of the District

11

Court, any potential member of the Settlement Class, whether or not such Person has appeared in the Customer Class Action, from commencing, prosecuting, or continuing to prosecute in any court or forum any action or proceeding involving the subject matter of any of the Released Plaintiffs' Claims against any of the Released Defendants.

aa. "Released Claims" means the Released Trustee Claims, the Released Customer Claims, and the Claims released by U.S. Bank, pursuant to Paragraphs 17 through 20 below. In no event shall "Released Claims" be interpreted to include any claims the Trustee may have against PFG, Russell Wasendorf, Sr., Russell Wasendorf, Jr., or any of their past or present affiliates, parents, members, and subsidiaries, current and former, officers, directors, employees, managers, indirect or direct shareholders, partners, principals, attorneys, agents, insurers, representatives, accountants, predecessors, successors and assigns or any other actual or potential party other than the Released Defendants, whether now or in the future.

bb. "Released Customer Claims" means any and all Claims, including Unknown Claims, that have been, can or might have been asserted by, through, or on behalf of the Customer Representative Plaintiffs, each and every member of the Settlement Class, and each of their respective predecessors, successors, affiliates, assigns, purchasers or other transferees, attorneys, heirs, representatives, administrators, executors, devisees, legatees, estates, and all others claiming through them, against any one or more of the Released Defendants, for, upon or by reason of any matter from the beginning of time arising out of, relating to, or in connection with, in any way or manner, the Trustee Releasees, PFG, Russell Wasendorf, Sr., Russell Wasendorf, Jr., or any of their past or present affiliates, parents, members, and subsidiaries, current and former officers, directors, employees, managers, indirect or direct shareholders, partners, principals, attorneys, agents, insurers, representatives,

accountants, predecessors, successors and assigns or related parties, including but not limited to any Claims asserted in the Customer Class Action and any Claims or Unknown Claims related to alleged fraud, breach of any duty, negligence, unjust enrichment, violation of the Illinois Fiduciary Obligations Act, violation of the Uniform Fiduciaries Act as adopted in whole or in part by any state, violation of the Commodity Exchange Act (17 U.S.C. § 1, et seq.), or the aiding and abetting of such conduct (including but not limited to any Claims or Unknown Claims relating in any manner to the alleged misuse of PFG's customer money, securities, and/or property). Claims against current or future defendants in the Customer Class Action who are not Released Defendants are not included within and are excluded from the definition of "Released Customer Claims" and are not being released by the Settlement Class as part of this Settlement. In no event shall "Released Customer Claims" be interpreted to include any claims the Customer Representative Plaintiffs may have against Russell Wasendorf, Sr., Russell Wasendorf, Jr., or any of their partners, principals, attorneys, agents, insurers, representatives, accountants, predecessors, successors and assigns or any other actual or potential party other than the Released Defendants, whether now or in the future.

cc. "Released Defendants" means U.S. Bank and each of its former, current, and future affiliates, parents, members, and subsidiaries, the predecessors, successors and assigns of each such entity, and each and all of the former, current, and future officers, directors, employees, managers, indirect or direct shareholders, partners, principals, attorneys, agents, insurers, representatives, and accountants of each such entity. In no event shall "Released Defendants" be interpreted to mean PFG, Russell Wasendorf, Sr., Russell Wasendorf, Jr., or any of their past or present affiliates, parents, members, and subsidiaries, current and former, officers, directors, employees, managers, indirect or direct shareholders, partners, principals,

attorneys, agents, insurers, representatives, accountants, predecessors, successors and assigns or any other actual or potential party other than the Released Defendants, whether now or in the future, to the Customer Class Action.

dd.    "Released Plaintiffs' Claims" means both the Released Customer Claims and the Released Trustee Claims.

ee.    "Released Trustee Claims" means any and all Claims, including Unknown Claims, that have been, can or might have been asserted by, through, or on behalf of the Trustee, the Estate, and each of their respective predecessors, successors, affiliates, assigns, purchasers or other transferees, attorneys, heirs, representatives, administrators, executors, devisees, legatees, estates, and all others claiming through them against any one or more of the Released Defendants for, upon or by reason of any matter, cause or thing whatsoever from the beginning of time arising out of, relating to, or in connection with, in any manner, PFG, Russell Wasendorf, Sr., Russell Wasendorf, Jr., or any of their past or present affiliates, parents, members, and subsidiaries, current and former officers, directors, employees, managers, indirect or direct shareholders, partners, principals, attorneys, agents, insurers, representatives, accounts, predecessors, successors and assigns or related parties, including but not limited to any Claims challenging payments or transfers made to U.S. Bank and obligations incurred by the debtor with respect to U.S. Bank on any grounds, including any Claims that payments, transfers or obligations are voidable preferential transfers or fraudulent conveyances, any Claims asserted in the Customer Class Action and any Claims or Unknown Claims related to alleged fraud, breach of duty, negligence, unjust enrichment, violation of the Illinois Fiduciary Obligations Act, violation of the Uniform Fiduciaries Act as adopted in whole or in part by any state, violation of the Commodity Exchange Act (17 U.S.C. § 1, et seq.), or the aiding and abetting of such conduct

14

(including but not limited to any Claims or Unknown Claims relating in any manner to the alleged misuse of PFG's customer money, securities, and/or property).

ff.     "Settlement" means the settlement contemplated by this Agreement.

gg.     "Settlement Amount" means the sum of $44,500,000 to be paid by U.S. Bank pursuant to the Settlement.

hh.     "Settlement Class" means all persons or entities who held money, property, and/or securities pursuant to 7 U.S.C. § 6d(a)(2) at PFG as of the Petition Date. Excluded from the Settlement Class are: (i) all 30.7 Customers; (ii) any Person named as a defendant in the Consolidated Amended Class Action Complaint (including any immediate family members of such defendant and any parent, subsidiary or affiliate of any defendant) who held money, securities, or property at PFG; (iii) any parent, subsidiary or affiliate of PFG that held money, securities, or property at PFG and that could otherwise be deemed to be a member of the Settlement Class; and (iv) any Persons that exclude themselves from the Settlement Class by filing a request for exclusion that is accepted by the District Court.

ii.     "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

jj.     "Settlement Fund" means the Settlement Amount plus any accrued interest that results from the deposit of such funds into the Settlement Fund Account.

kk.     "Settlement Fund Account" means an interest bearing signature account maintained at U.S. Bank to which the Settlement Amount will be deposited and which will be administered in accordance with this Agreement.

15

ll.    "Settlement Hearing" means the hearing to be set by the District Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

mm.    "Settlement Notice" or "Notice of Settlement" means the notices to be provided to Settlement Class Members of the proposed Settlement, including the Claim Notice.

nn.    "Term Sheet" means the Parties' Term Sheet dated May 15, 2015.

oo.    "Termination Notice" is defined in Paragraph 29 hereof.

pp.    "Tolling Agreement" means the agreement entered into between the Trustee and U.S. Bank on June 25, 2014, as subsequently amended on October 27, 2014, January 1, 2015, and April 9, 2015.

qq.    "Trustee Releasees" means the Trustee and the Estate and all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, predecessors, and representatives and any other Person claiming by or through the Trustee or the Estate.

rr.    "Unknown Claims" means any Released Claims which the Trustee, Customer Representative Plaintiffs, any other Settlement Class Members, or U.S. Bank does not know or suspect to exist in his, her or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement.  The Parties agree that, upon the Effective Date, the Trustee, the Customer Representative Plaintiffs, and U.S. Bank shall have expressly waived, and each of the other Settlement Class Members shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of

16

common law or foreign law, which is similar, comparable, or equivalent to California Civil Code

§ 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge, and the other Settlement Class Members shall be deemed by operation

of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for

and a key element of the Settlement of which this release is a part.

## CLASS CERTIFICATION

3.      Solely for purposes of the Settlement and for no other purpose, the Parties shall

consent to:  (a) appointment of the Customer Representative Plaintiffs as class representatives for

the Settlement Class; (b) appointment of Co-Lead Counsel as class counsel for the Settlement

Class; and (c) certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the

Federal Rules of Civil Procedure.

## APPROVAL OF SETTLEMENT

4.      Promptly after the execution of this Agreement, the Trustee shall submit to the

Bankruptcy Court a motion for approval of the Settlement and the entry of a Bankruptcy

Approval Order substantially in the form attached hereto as Exhibit A.  The Trustee shall consult

in good faith with U.S. Bank and the Customer Representative Plaintiffs as to the language of the

motion seeking such Bankruptcy Approval Order.

5.      Promptly after the execution of this Agreement the Customer Representative

Plaintiffs shall submit to the District Court a motion for preliminary approval of the Settlement,

including entry of a Preliminary Approval Order substantially in the form attached hereto as

Exhibit E.  The Customer Representative Plaintiffs shall consult in good faith with the Trustee

and U.S. Bank as to the language of the motion and related pleadings seeking such Preliminary Approval Order. In addition, the Customer Representative Plaintiffs shall undertake to provide all requisite notices of the hearing on such motion. The Customer Representative Plaintiffs shall otherwise cooperate with U.S. Bank in complying with the requirements of CAFA, including the notice provision contained in 28 U.S.C. § 1715.

6.      U.S. Bank shall comply with the requirements of CAFA, including the notice provision contained in 28 U.S.C. § 1715.

7.      Pursuant to the terms of the Preliminary Approval Order, Fed. R. Civ. P. 23 and the District Court, the Customer Representative Plaintiffs shall file a motion with the District Court for entry of a Final Order by the District Court that finally approves this Agreement and the Settlement. The Customer Representative Plaintiffs shall consult in good faith with the Trustee and U.S. Bank as to the language of the motion and supporting memorandum of law seeking such Final Order, including as to the form of such Order itself. In addition, the Customer Representative Plaintiffs shall undertake to provide all requisite notices of the Settlement Hearing. The Customer Representative Plaintiffs shall otherwise cooperate with U.S. Bank in complying with the requirements of CAFA, including the notice provision contained in 28 U.S.C. § 1715.

8.      From and after May 15, 2015, the Customer Representative Plaintiffs shall suspend and hold in abeyance prosecuting against U.S. Bank the Customer Class Action or any separate action containing similar allegations until thirty (30) days after the termination of the Settlement or the Settlement does not become effective (as set forth in Paragraphs 28 through 33) (the "Suspension and Abeyance Period").

18

9.     If the Settlement contemplated by this Agreement is approved by Final Order of the District Court following a Settlement Hearing, then the Customer Representative Plaintiffs shall request, with the consent of U.S. Bank, that the Court enter a Judgment, substantially in the form attached hereto as Exhibit C.

## SETTLEMENT CONSIDERATION

10.     In consideration for the promises and obligations contained herein, including the full and final release, settlement and discharge of all Released Customer Claims and all Released Trustee Claims against the Released Defendants, U.S. Bank shall pay or cause to be paid the Settlement Amount, shall dismiss with prejudice the JPMorgan Settlement Appeal, and shall transfer the full remaining balance in U.S. Bank account number 000000767467 to the Trustee, but only in accordance with and subject to the terms and conditions of this Agreement.  For the avoidance of doubt, the CFTC Settlement shall not reduce or offset the Settlement Amount or otherwise limit in any way U.S. Bank's obligation to pay the full Settlement Amount subject to the terms and conditions herein.

11.     In consideration for the promises and obligations contained herein, including the full and final release, settlement and discharge of all Released Plaintiffs' Claims against the Released Defendants if, after the Effective Date of this Agreement, the Trustee recovers in excess of $7,500,000 in additional funds payable to 4d Customers from third parties (specifically excepting any funds presently held in PFG bank accounts and subject to dispute, which exception includes any funds received as part of the JPMorgan Settlement), the Trustee will pay to U.S. Bank 50 percent of such excess funds up to a maximum of the Settlement Amount.

## SETTLEMENT FUND ACCOUNT; MAINTENANCE OF SETTLEMENT FUND

12.     a.     U.S. Bank shall deposit the Settlement Amount in the Settlement Fund Account no later than fourteen (14) business days after the later of (a) the District Court has

entered the Preliminary Approval Order and (b) the date by which U.S. Bank has received a signed Form W-9 reflecting the taxpayer identification number to be distributed as ordered by the District Court in the Customer Class Action. A representative to be chosen by Co-Lead Counsel and a representative to be chosen by U.S. Bank shall be the signatories to the Settlement Fund Account. The signatures of both representatives will be required for any transfers or withdrawals from the Settlement Fund Account.

   b. The Settlement Fund shall be used to pay any (i) Distribution Taxes, (ii) any Notice Costs and Administration Costs and (iii) any Customer Representative Plaintiffs Attorneys' Fees Payment and service awards. Any Notice Costs incurred prior to the Effective Date will be paid from the Settlement Fund.

   c. The Net Settlement Fund shall be distributed, subject to court approval, as provided in Paragraphs 13 and 14 below and the Plan of Allocation.

   d. The Settlement Fund Account shall be established, operated and managed as a Qualified Settlement Fund within the meaning of Internal Revenue Code § 468B, as amended, and all rules and regulations thereunder, including Treasury Regulations Sections 1.468B-1 to 1.468B-5, and any other applicable law. All transfers of cash or property to or from the Settlement Fund Account shall be made in compliance with such Treasury Regulations. The Parties agree that Co-Lead Counsel will serve as the Qualified Settlement Fund administrator (the "Fund Administrator") in accordance with the terms of this Agreement. The Fund Administrator will receive the Settlement Amount deposit, when payment thereof becomes due under the terms hereof, and shall make all payments required to be made pursuant to the terms of this Agreement, pay all taxes imposed on the income of the Settlement Fund, and arrange for the preparation and filing of all tax reports, tax forms and tax returns required to be filed by the

Settlement Fund, including all Forms 1099.  The Fund Administrator shall segregate, invest, administer and distribute the Settlement Fund pursuant to this Agreement and such other orders as the District Court may make.  The Released Defendants shall have no responsibility for or liability with respect to the investment, allocation or distribution of funds of the Settlement Fund; the determination, administration, calculation, or payment of claims or distributions from the Settlement Fund; or the payment or withholding of any taxes or the filing of any tax returns, forms or notices with respect to the income of or distributions from the Settlement Fund.  The Released Defendants shall supply to the Fund Administrator the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. § 1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Released Defendants (or some other person on behalf of the Released Defendants) make a transfer to the Settlement Fund Account.

e.      Concurrently with seeking the Preliminary Approval Order, the Customer Representative Plaintiffs shall also seek designation of the Settlement Fund as a Qualified Settlement Fund.  This account shall be known as the PFG Customer Litigation Qualified Settlement Fund, and by order of the Court will be created within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder, and any other applicable law, and shall be referred to under that name in its official actions and dealings.

f.      U.S. Bank shall transfer the full remaining balance in U.S. Bank account number 00000076467 to the Trustee no later than five (5) business days after the Effective Date. The Trustee agrees that upon transfer of this balance, the U.S. Bank Claim shall be deemed allowed as a general unsecured claim in the amount of $3,000,000 (three million dollars) and

disallowed to the extent it exceeds $3,000,000 (three million dollars) and shall, for purposes of

priority, be treated as a 11 U.S.C.§ 726(a)(2) claim.

## DISTRIBUTION OF SETTLEMENT AMOUNT

13.     The Parties agree that, subject to any additional requirements of Federal Rule of

Civil Procedure 23 (or any requirements that may be imposed by either the Bankruptcy Court or

the District Court in connection with the approval process), the Net Settlement Fund shall be

distributed to the Settlement Class Members in accordance with this Agreement and the Plan of

Allocation.  The Customer Representative Plaintiffs will seek District Court approval for such

Plan of Allocation.  The Plan of Allocation is severable from the remainder of this Agreement

and approval of the Plan of Allocation by the District Court, or any modification thereof, is not

an integral part of or condition for the effectuation of any portion of this Agreement.  Similarly,

any modification of the Plan of Allocation will not affect any other provision of the Agreement.

Except for distributions to Settlement Class Members who do not have an Allowed Claim in the

Bankruptcy Case, the Net Settlement Fund shall be allocated on a *pro rata* basis to the members

of the Settlement Class and processed for distribution through the claims process established in

the Bankruptcy Case, after the Effective Date, to the appropriate members of the Settlement

Class.  The Customer Representative Plaintiffs will make available to the Trustee in a reasonably

timely manner the claims forms and supporting materials submitted by Settlement Class

Members who do not have an Allowed Claim in the Bankruptcy Case such that the Trustee will

have a meaningful opportunity to confirm the validity of such claims or advise the Customer

Representative Plaintiffs of any objections thereto in advance of any submission to the District

Court seeking authorization for distributions with respect to said claims; and the Trustee shall

have the right to be heard in the District Court with respect to the approval of the claim and any

proposed distribution of the Net Settlement Fund to such claimants.  Notwithstanding the

foregoing, no member of the Settlement Class who delivers a valid and timely request for exclusion from the Settlement Class and who does not withdraw such request for exclusion as provided in this Agreement shall receive any portion of the Net Settlement Fund.

14.     No later than ten (10) days after the later of: (a) the Effective Date; or (b) the Plan of Allocation receives final approval, the Fund Administrator shall disburse to Co-Lead Counsel from the Settlement Fund the total amount due to the Settlement Class Members who do not have an Allowed Claim in the Bankruptcy Case, if any, pursuant to a Final Order of the District Court and the approved Plan of Allocation, and Co-Lead Counsel shall distribute to those Settlement Class Members the amounts which each is due.  No earlier than five (5) days after that distribution, and within five (5) days of receipt of written notice by the Trustee to U.S. Bank and Co-Lead Counsel that the Trustee has made all necessary arrangements to distribute the remaining amount of the Net Settlement Fund to the members of the Settlement Class who have an Allowed Claim in the Bankruptcy Case as provided for in a Final Order of the District Court and the approved Plan of Allocation, the Fund Administrator shall disburse to the Trustee the remaining amount of the Net Settlement Fund (*i.e.*, the amount that is to be disbursed to the members of the Settlement Class who have an Allowed Claim in the Bankruptcy Case) to be distributed by the Trustee as provided for in a Final Order of the District Court and the approved Plan of Allocation.  If any disbursement is made pursuant to this Paragraph 14 before a Final Order has established the amount of any Customer Representative Plaintiffs Attorneys' Fees Payment and service awards, and the amount of such Customer Representative Plaintiffs Attorneys' Fees Payment and service awards later established by a Final Order is less than the amount that was used to calculate the Net Settlement Fund, the Net Settlement Fund shall be recalculated using the amount established by such Final Order, and the Fund Administrator shall

disburse to Co-Lead Counsel and the Trustee, respectively, for distribution to Settlement Class Members any remaining funds as provided for in a Final Order of the District Court and the approved Plan of Allocation.

15.     This is not a claims-made settlement, and U.S. Bank shall not have any right to the return of the Settlement Amount or any portion thereof after the occurrence of the Effective Date.  The Parties agree that any obligation of U.S. Bank to make payments under the Settlement is limited to the Settlement Amount, and that U.S. Bank shall have no further monetary obligation to the Trustee, Co-Lead Counsel, the Customer Representative Plaintiffs or any Settlement Class Member, arising from or related to PFG, its affiliates, related parties, the Released Plaintiffs' Claims, or this Agreement notwithstanding any objection to or appeal from any Plan of Allocation or the award, if any, of any Customer Representative Plaintiffs Attorneys' Fees Payment or service awards in connection with the Settlement.

## RELEASE OF CLAIMS

16.     The obligations incurred pursuant to this Agreement shall be in full and final disposition of any and all Released Plaintiffs' Claims as against all Released Defendants.

17.     Upon the Effective Date, the Trustee Releasees, their affiliates, and their respective predecessors, successors (including any trustee in bankruptcy), successors-in-interest, assigns and agents, each on behalf of itself and any other Person claiming under or through it, shall be deemed by operation of law to have released, waived, discharged, and dismissed each and every Released Trustee Claim against each and every Released Defendant and shall forever be enjoined from commencing or prosecuting in any forum any or all of the Released Trustee Claims against each and every Released Defendant, except that the foregoing release, waiver and discharge shall not release, waive or discharge the Trustee's right to enforce this Agreement.

18.     Upon the Effective Date, the Customer Representative Plaintiffs, each and every Settlement Class Member, and each of their respective predecessors, successors, (including any trustee in bankruptcy), successors-in-interest, affiliates, assigns, purchasers or other transferees, attorneys, agents, heirs, representatives, administrators, executors, devisees, legatees, and estates, shall be deemed by operation of law to have, and by operation of the Judgment shall have, released, waived, discharged, and dismissed each and every Released Customer Claim against each and every Released Defendant and shall forever be enjoined from commencing or prosecuting in any forum any or all of the Released Customer Claims against each and every Released Defendant, except that the foregoing release, waiver and discharge shall not release, waive or discharge the Customer Representative Plaintiffs' right to enforce this Agreement.

19.     Upon the Effective Date, the Released Defendants, each on behalf of itself and any other Person claiming under or through it, shall be deemed by operation of law to have released, waived and discharged the Trustee Releasees from and in respect to all Claims, including Unknown Claims (and including, without limitation, any administrative expense claims pursuant to 11 U.S.C. § 503, and any customer claim pursuant to 15 U.S.C. § 78fff-2(a)(2)), which the Released Defendants may have ever had, may now have or hereafter can, shall or may have against the Trustee Releasees for, upon or by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this Agreement arising out of, related to, or in connection with PFG or its affiliates, including but not limited to the institution, prosecution, administration, settlement or resolution of the Bankruptcy Case, except that the foregoing release, waiver and discharge shall not release, waive or discharge U.S. Bank's right to enforce this Agreement.  Notwithstanding the foregoing, nothing herein shall be construed to release, waive or discharge U.S. Bank's right to pursue its allowed general unsecured claim in

the Bankruptcy Case, as set forth in paragraph 12.f. herein, and U.S. Bank shall be entitled to participate in any distributions of assets that may be made at the priority level assigned to this allowed claim.

20.     Upon the Effective Date, the Released Defendants shall be deemed by operation of law to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Customer Representative Plaintiffs, other Settlement Class Members, Co-Lead Counsel and the Executive Committee from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Customer Class Action or the Released Plaintiffs' Claims, except that the foregoing release, waiver, and discharge shall not release, waive, or discharge the right of U.S. Bank to enforce this Agreement.

21.     To the fullest extent permitted by law, by the terms of the Judgment, all Persons, including any Person who is, was ever, or could have been named as a defendant in the Customer Class Action, shall be permanently enjoined, barred and restrained from bringing, commencing, prosecuting or asserting any claims, actions, or causes of action for contribution or indemnification, however styled, against each and every of the Released Defendants for any costs, liability, judgment or settlement which they pay or are obligated to pay or agree to pay to the Trustee, the Estate, the Settlement Class or any member of the Settlement Class, arising out of, relating to, or in connection with, in any way or manner, the Released Plaintiffs' Claims or any claim that has been or could have been or could be in the future asserted in the Bankruptcy Case or the Customer Class Action, whether arising under federal, state, or foreign law as claims, cross-claims, counterclaims, third-party claims or otherwise, in the Bankruptcy Court, the District Court, or any other federal, state, or foreign court, or in any arbitration proceeding,

administrative agency proceeding, tribunal, or any other proceeding or forum ("Contribution Claims"). The proposed Judgment will include a reciprocal order equal in scope to that contemplated in this Paragraph 21 enjoining any Released Defendant from bringing Contribution Claims against any Person barred from seeking contribution pursuant to the Settlement and Judgment ("Barred Defendant").

22.     Any monetary award or judgment obtained by the Trustee (or any Person claiming through him or the Estate or to whom or which such claim is assigned), the Customer Representative Plaintiffs, or one or more of the Settlement Class Members, from or against any Barred Defendant, for which contribution or common law indemnification is available from any Released Defendant, shall be reduced by the lowest amount necessary under applicable law to effect a complete bar against contribution or common law indemnity claims, however styled, against all Released Defendants.

## REPRESENTATIONS AND WARRANTIES

23.     Each Party represents and warrants that it has not sold, assigned, transferred or otherwise disposed of (other than by the releases contemplated by this Agreement), and will not sell, assign, transfer or otherwise dispose of (other than by the releases contemplated by this Agreement), any Claim purported to be released by such Party pursuant to Paragraphs 17 through 20 above. Without limitation of the foregoing, Customer Representative Plaintiffs and Co-Lead Counsel represent and warrant that the Customer Representative Plaintiffs are members of the Settlement Class and that neither the Released Customer Claims against U.S. Bank nor any right of the Customer Representative Plaintiffs to receive a potential further distribution in the Bankruptcy Case has been assigned, encumbered or in any manner transferred in whole or in part.

27

## ATTORNEYS' FEES, SERVICE AWARDS AND EXPENSES

24.    Co-Lead Counsel may apply to the District Court for Customer Representative Plaintiffs Attorneys' Fees Payments from the Settlement Amount consisting of attorneys' fees of 31% of the Settlement Amount, plus expenses and service awards. Co-Lead Counsel agree that the aggregate amount of expenses and service awards sought in connection with the Settlement will not exceed $500,000.  If the aggregate amount of expenses and service awards exceeds $500,000, any such overage shall be deducted from the attorneys' fee award.  The Trustee will not oppose the foregoing request.  To the extent the Trustee must seek approval of the Settlement in the Bankruptcy Court, the Trustee will use best efforts to secure approval of the foregoing terms in this paragraph.  U.S. Bank and the Trustee will not object to any application for any Customer Representative Plaintiffs Attorneys' Fees Payment or service award to be paid from the Settlement Fund as filed by Co-Lead Counsel, provided that such application is in accordance with the terms of this Agreement.  U.S. Bank will not object to any application for any Customer Representative Plaintiffs Attorneys' Fees Payment to be paid from or calculated on the basis of the CFTC Settlement, as filed by Co-Lead Counsel, provided that such application is in accordance with the terms of this Agreement.  U.S. Bank agrees and it will acknowledge, in a form reasonably satisfactory to Co-Lead Counsel, to the Court in *In re Peregrine Financial Group Customer Litigation*, 12-cv-5546 (N.D. Ill.), that Co-Lead Counsel substantially contributed to the CFTC Settlement.  For the avoidance of doubt, U.S. Bank shall have no obligation to pay or reimburse any fees, costs, or expenses incurred by or on behalf of the Customer Representative Plaintiffs, any other Settlement Class Member, the Trustee, any other party, or any of their respective counsel.

25.    Any Customer Representative Plaintiffs Attorneys' Fees Payment, as awarded by the District Court, shall be distributed (together with any interest accrued thereon) to Co-Lead

Counsel from the Settlement Fund Account, as ordered, immediately after the Effective Date and after the District Court enters a Final Order awarding any such Customer Representative Plaintiffs Attorneys' Fees Payment. Co-Lead Counsel shall thereafter allocate among other counsel who have participated in the Customer Class Action the awarded Customer Representative Plaintiffs Attorneys' Fees Payment in a manner that Co-Lead Counsel in their sole discretion deem appropriate.

26. Notwithstanding anything to the contrary in this Agreement, the proceedings for the District Court to determine the amount of any Customer Representative Plaintiffs Attorneys' Fees Payment, and the District Court's award of any such Customer Representative Plaintiffs Attorneys' Fees Payment, are not conditions of the Settlement and are to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any Customer Representative Plaintiffs Attorneys' Fees Payment awarded shall be set forth in a fee and expense award separate from the Judgment entered by the District Court to insure that any appeal of either order shall not constitute an appeal of the other. Any order or proceedings relating to the application of Co-Lead Counsel for an award of a Customer Representative Plaintiffs Attorneys' Fees Payment, or any appeal from any order related thereto, or reversal or modification thereof, will not operate, and will not provide any basis, to modify, cancel, or terminate the Settlement, or affect or delay the finality of the Judgment or any other orders entered pursuant to this Agreement.

27. In the event that the District Court's order or judgment awarding Customer Representative Plaintiffs Attorneys' Fees Payment or service awards is reversed or modified (for any reason other than termination of the Settlement), then Co-Lead Counsel shall, in an amount consistent with such reversal or modification, refund such Customer Representative Plaintiffs

29

Attorneys' Fees Payment received by Co-Lead Counsel or service awards, plus interest earned thereon, within ten (10) days from receiving notice of such reversal or modification. Any refunds paid pursuant to this paragraph shall become part of the Net Settlement Fund and be distributed by the Trustee in accordance with the Plan of Allocation.

## CONDITIONS OF SETTLEMENT AND EFFECT OF TERMINATION

28.     The effectiveness of the Settlement shall be conditioned on the occurrence or waiver of all of the following events:

a.     each Party's receipt of a counterpart of this Agreement that has been duly executed by each of the other Parties;

b.     the Bankruptcy Court, upon and after appropriate notice and opportunity for a hearing, has entered the Bankruptcy Approval Order;

c.     the District Court, upon and after appropriate notice and opportunity for hearing, has entered the Preliminary Approval Order;

d.     the District Court, upon and after appropriate notice and opportunity for a hearing, has entered (i) an order (in form and substance acceptable to all of the Parties and that shall comply with the requirements of CAFA (and in particular, 28 U.S.C. §1715(d)) finally approving this Agreement and (ii) the Judgment, and such order and the Judgment has each become a Final Order;

e.     the JPMorgan Settlement Appeal is dismissed with prejudice; and

f.     none of the Customer Representative Plaintiffs, the Trustee or U.S. Bank has any right to terminate this Agreement based upon the terms herein and in the Opt-Out Contingency Agreement (defined below).

The date upon which the last of the events or waivers listed above occurs shall be the "Effective Date." Any waiver of any of the preceding conditions shall not be effective unless and until set

forth in a writing signed by all of the Parties, and any Party may elect to sign or not sign any proffered waiver in its sole and absolute discretion.

29.     Each of the Parties shall have the right to terminate the Settlement by delivering written notice of its election to do so ("Termination Notice") to all other Parties within thirty (30) days of:  (a) the Bankruptcy Court declining to enter the Bankruptcy Approval Order in any material respect; (b) the District Court declining to enter the Preliminary Approval Order in any material respect; (c) the District Court declining to enter the Judgment in any material respect; (d) entry prior to the Effective Date of an order by the issuing court or by a higher court modifying, vacating, or reversing in any material respect the Bankruptcy Approval Order or the Judgment; or (e) any of the conditions of Paragraph 28 of this Agreement otherwise not being satisfied or waived by the Parties in writing.  Notice shall take effect upon delivery.  The Parties agree, however, that any decision with respect to any application for the Customer Representative Plaintiffs Attorneys' Fees Payment and service awards shall not be considered material to the Settlement, shall not be a condition to the effectiveness of the Settlement, shall not affect the finality of the Judgment, and shall not be grounds for termination.

30.     Simultaneously herewith, the Parties, by and through their respective counsel, are executing a supplemental confidential agreement, which gives U.S. Bank the right, but not the obligation, to terminate the Settlement in the event that a certain portion of the Settlement Class delivers timely and valid requests for exclusion from the Settlement Class (the "Opt-Out Contingency Agreement").  The Bankruptcy Court and the District Court will be informed that there is such an agreement among the Parties, but it will not be filed with any court, except that the substantive contents of the Opt-Out Contingency Agreement, as provided in the Opt-Out Contingency Agreement, may be disclosed to either Court, *in camera*, if a dispute arises with

31

respect to the Opt-Out Contingency Agreement or if so requested or as otherwise ordered to do so. The Parties will keep the terms of the Opt-Out Contingency Agreement confidential, except if compelled by judicial process to disclose them.

31.     Except as otherwise provided herein, in the event that the Settlement does not become effective (as set forth in Paragraph 28) or is terminated (as set forth in Paragraphs 29 or 30), this Agreement (including the releases contemplated herein), and any interim actions taken or deemed taken hereunder, shall be null and void and without prejudice to any claim, defense or position that has been, or may be, asserted by any of the Parties in the Bankruptcy Case, the Customer Class Action, or any other action or proceeding; none of its terms shall be effective or enforceable; the fact and terms of the Settlement and all related negotiations shall not be admissible in any trial or used for any other purpose in the Bankruptcy Case, Customer Class Action, or any other action or proceeding; and the Parties shall revert to their respective statuses and litigation positions as they existed immediately prior to the original execution and delivery of the Term Sheet on May 15, 2015.

32.     In the event that the Settlement does not become effective or is terminated (as set forth in Paragraphs 28 through 30), and U.S. Bank has delivered the Settlement Amount pursuant to Paragraph 12(a), the Fund Administrator shall return the Settlement Fund to U.S. Bank no later than five (5) days after the later of (a) the Settlement does not become effective or is terminated; and (b) the date by which the Fund Administrator has received appropriate payment transfer instructions from U.S. Bank, including the bank name and address, ABA routing number, account name and number, a signed letter from the payee on the payee's letterhead including such payment transfer instructions, and a signed Form W-9 reflecting the taxpayer identification number to be distributed. For the avoidance of doubt, in the event that the

Settlement Fund is returned to U.S. Bank pursuant to this paragraph, Co-Lead Counsel shall be liable to refund to U.S. Bank any Customer Representative Plaintiffs Attorneys' Fees Payment and service awards distributed from the Settlement Fund prior to the return of the Settlement Fund to U.S. Bank.

33. To the extent necessary to preserve each of the Parties' rights and claims, any and all statutory, contractual or other periods of limitation or repose, and any other defense, legal or equitable, which is based, in whole or in part, upon the passage of time, is tolled as of May 15, 2015, through and including the later date upon which the Term Sheet or this Agreement, as applicable, becomes null and void; provided, however, that with respect to the Trustee and U.S. Bank, all rights and claims described in and subject to the Tolling Agreement shall be tolled for a period of 45 days following the date upon which this Agreement becomes null and void.

## NO ADMISSION; DENIAL OF LIABILITY

34. Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any Party to this Agreement or any Released Defendant or evidence of any fact or matter alleged or that could have been alleged in the Bankruptcy Case, the Customer Class Action, or in any other actions or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce the terms of the Settlement.

35. Without limiting the generality of the preceding paragraph, U.S. Bank is entering into this Settlement for settlement purposes only, without any admission of fault, liability, or wrongdoing whatsoever, and expressly denies any fault, liability, or wrongdoing whatsoever in connection with the operation, maintenance or oversight of or relating to any PFG customer segregated account, with any transfer or other transaction from or relating to any PFG customer segregated account, or with any other matter relating to PFG, whether asserted (or whether any

33

such fault, liability, or wrongdoing could have been asserted) in the Bankruptcy Case, the

Customer Class Action, or otherwise, including any of the allegations in the Third Consolidated

Amended Class Action Complaint.

### MISCELLANEOUS

36.     The headings herein are used for the purpose of convenience only and are not

meant to have legal effect.

37.     Counsel for the Customer Representative Plaintiffs, the Trustee and U.S. Bank

will not issue any press releases regarding the Settlement.  In response to inquiries regarding the

settlement, Counsel for the Customer Representative Plaintiffs, the Trustee and U.S. Bank will

respond, if at all, that the Settlement is a fair compromise of disputed claims as set forth in the

motion for preliminary approval, motion for final approval and supporting filings as made in the

Customer Class Action and may state that they are pleased that a resolution has been reached.  In

addition, U.S. Bank shall be permitted to state that the Settlement will not significantly impact

the company's operating results.

38.     The Parties (including through their counsel) agree to act in good faith and take

reasonable steps towards the consummation of this Settlement in accordance with the terms of

this Agreement.

39.     Each of the attorneys executing this Agreement, any of its exhibits, or any related

settlement documents on behalf of any Party or Parties hereto hereby warrants and represents

that he or she has been authorized to do so by the Party or Parties he or she represents.  Without

limitation of the foregoing, Co-Lead Counsel represent that they are fully authorized to act on

behalf of the Customer Representative Plaintiffs with respect to entering into this Settlement and

taking any actions necessary to effectuate the Settlement.

40. All of the schedules and exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

41. This Agreement, the schedule and exhibits attached hereto, and the Opt-Out Contingency Agreement constitute the entire agreement between the Parties and supersede any prior agreements or understandings, whether written or oral, including the Term Sheet.

42. No representations, warranties or inducements have been made to or relied upon by any Party concerning this Agreement, other than the representations, warranties and covenants expressly set forth herein and in the Opt-Out Contingency Agreement.

43. The Trustee acknowledges and agrees that he and his counsel and advisors have had reasonable and adequate access to U.S. Bank's books and records in connection with his statutorily charged investigation. Nothing in this Agreement shall affect either the Trustee's right to seek information from U.S. Bank by formal or informal means in pursuit of his investigatory duties in accordance with the terms of the Order of the Bankruptcy Court and pursuant to § 78fff-1(d), 15 U.S.C. § 78fff-(1)d, 17 C.F.R. § 190.08, or any rights of U.S. Bank to object to or oppose providing such information, provided that, prior to the issuance of any formal or informal process, demand or request, counsel for the Trustee and U.S. Bank shall consult in good faith with respect to any information sought by the Trustee and U.S. Bank shall cooperate and assist the Trustee to the extent reasonable as agreed in such consultations.

44. This Agreement shall be binding upon, and shall inure to the benefit of, each Party and each such Party's respective agents, representatives, successors, executors, heirs, assigns, and any other Person claiming by or through such Party.

45. This Agreement may be executed in any number of counterparts by any of the signatories hereto, and the transmission of an original signature page electronically (including by

facsimile or portable document format) shall constitute valid execution of the Agreement as if all signatories hereto had executed the same document. Copies of this Agreement executed in counterpart shall constitute one and the same agreement.

46.     This Agreement, and any and all disputes arising out of or relating in any way to this Agreement (including as to any matter relating in any way whatsoever to the Settlement), whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of Illinois without regard to conflict of laws principles.

47.     The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement. The use of the terms "including" or "include" shall in all cases herein mean "including but not limited to" or "include but are not limited to," respectively. Reference to any Person includes such Person's agents, representatives, successors, executors, heirs, assigns, and any other Person claiming by or through such Person to the extent such successors and assigns are permitted by the terms of this Agreement. Reference to a Person in a particular capacity in relation to another Person (including in relation to a Party) shall refer to such Person only in such capacity and relation and not in any other capacity. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof. Reference to any law means such law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder. References (whether underscored or otherwise) to paragraphs, clauses, exhibits or schedules shall refer to those portions of this Agreement, and any references (whether underscored or otherwise) to a clause shall, unless

otherwise identified, refer to the appropriate clause within the same paragraph in which such reference occurs. The use of the terms "hereunder," "hereof," "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular paragraph or clause of or exhibit or schedule to this Agreement. All terms defined in this Agreement shall have the above-defined meanings when used in any certificate, report or other document made or delivered pursuant to this Agreement, unless the context therein shall clearly otherwise require. In the computation of periods of time in this Agreement from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to, but not through."

48. The Bankruptcy Court and the District Court, as appropriate, shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Bankruptcy Court and the District Court, as the case may be, for purposes of implementing and enforcing this Agreement.

49. This Agreement may not be modified or amended, in whole or in part, nor may any of its provisions be waived, in whole or in part, except by a writing signed by all Parties or their counsel or their respective successors in interest.

50. This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Agreement and the exhibits incorporated herein.

51. All agreements by, between or among the Parties, their counsel and their other advisors as to confidentiality, including the confidentiality of information exchanged between or

37

among them, shall remain in full force and effect and shall survive the execution of and any termination of this Agreement and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

52.     The Parties agree to refrain from making disparaging statements about any other Party in any statements to the media or other public communications (including statements made in court filings or in court) relating to the Settlement, including the claims to be released pursuant to the Settlement, prior to the termination, if any, of this Agreement.

53.     The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

54.     THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY DISPUTE OR OTHER MATTER RELATING TO THIS AGREEMENT, INCLUDING WITH RESPECT TO ANY DISPUTE RELATING TO ANY PARTY'S ACTIONS OR INACTIONS UNDER OR OTHERWISE IN RELATION TO THIS AGREEMENT.

[Remainder of Page Intentionally Left Blank]

Dated: June 18, 2015

SHAW FISHMAN GLANTZ &
TOWBIN LLC

_____
Mark L. Radtke
*Counsel for the Trustee*

GIRARD GIBBS LLP

_____
Daniel C. Girard
*Co-Lead Counsel for Customer Representative
Plaintiffs and the Proposed Class*

DORSEY & WHITNEY LLP

BERGER & MONTAGUE, P.C.

_____
Eric R. Sherman
*Counsel for U. S. Bank National Association*

_____
Michael C. Dell' Angelo
*Co-Lead Counsel for Customer Representative
Plaintiffs and the Proposed Class*

STUEVE SIEGEL HANSON LLP

_____
Norman E. Siegel
*Executive Committee for Customer
Representative Plaintiffs and the Proposed
Class*

39

Dated: June 18, 2015

SHAW FISHMAN GLANTZ &
   TOWBIN LLC

GIRARD GIBBS LLP

_____

Mark L. Radtke
*Counsel for the Trustee*

_____

Daniel C. Girard
*Co-Lead Counsel for Customer Representative
Plaintiffs and the Proposed Class*

DORSEY & WHITNEY LLP

BERGER & MONTAGUE, P.C.

_____

Eric R. Sherman
*Counsel for U.S. Bank National Association*

_____

Michael C. Dell'Angelo
*Co-Lead Counsel for Customer Representative
Plaintiffs and the Proposed Class*

STUEVE SIEGEL HANSON LLP

_____

Norman E. Siegel
*Executive Committee for Customer
Representative Plaintiffs and the Proposed
Class*

39