UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Peregrine Financial Group Customer Litigation* | Civil Action No. 12-cv-5546<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Daniel G. Martin |

**ORDER AWARDING ATTORNEYS' FEES AND EXPENSES**

The Court, having considered (a) Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses; (b) the Memorandum of Law in support; (c) the Plan of Allocation for the Settlement Class (as set out in Exhibit D to the Settlement Agreement, ECF 410-7, and as summarized in the proposed Notice (ECF 410-4) previously approved by this Court (ECF 417-4); (d) the Declarations filed in support and any exhibits thereto; and having held a hearing on October 13, 2015, and considered all of the submissions and arguments with respect thereto; pursuant to Rule 23 of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement dated June 18, 2015, filed as ECF No. 410-2 (the "Settlement Agreement") between the Customer Representative Plaintiffs ("Plaintiffs"), US Bank, N.A. ("U.S. Bank" or "Defendant"), and Ira Bodenstein (the "Trustee"), not individually, but solely as Chapter 7 Trustee for the estate of Peregrine Financial Group, Inc., it is hereby ORDERED that:

1. This Order incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meaning set forth in the Settlement Agreement.

2. Plaintiffs have moved for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, this Court makes the following findings of fact and conclusions of law:

(a) The instant litigation between Plaintiffs and U.S. Bank arose from the collapse of Peregrine Financial Group, Inc., in July 2012, when it was discovered that Peregrine's owner had misappropriated $200 million or more belonging to Peregrine's customers, allegedly from accounts held at U.S. Bank and JPMorgan;

(b) Plaintiffs allege that U.S. Bank breached legal duties in connection with its holding of Peregrine's customers' funds at U.S. Bank;

(c) U.S. Bank has vigorously defended itself, both on liability grounds and on the grounds that (assuming it were to be found liable) it could be held liable for at most only a fraction of the total loss incurred;

(d) U.S. Bank settled for $18 million claims brought by the Commodity Futures Trading Commission ("CFTC"), which were based on allegations similar to those made by the Plaintiffs, and the record demonstrates (and the parties acknowledge) that the efforts by Co-Lead Counsel in this litigation substantially contributed to the $18 million payment in the CFTC litigation;

(e) The Settlement entered into between Plaintiffs, the Trustee, and U.S. Bank provides that U.S. Bank will pay an additional $44.5 million to settle this litigation;

(f) Counsel's efforts have conferred an impressive monetary benefit on the Settlement Class: the funds recovered from U.S. Bank are substantial—both in absolute terms and when assessed in light of the risks of establishing liability and damages in this case;

(g) The Settlement was reached following negotiations held in good faith and in the absence of collusion;

(h) Because this Settlement generated a common fund for the Settlement Class, it is appropriate to compensate the attorneys who helped recover the fund, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007);

(i) To calculate an appropriate attorneys' fee award, the Court approximates the "market price" for the legal services provided, *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), including by taking into account the factors set forth in *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001);

(j) It is within this Court's discretion to determine the market rate based on either the "percentage of the fund" or the "lodestar" method, though the courts in the Seventh Circuit have increasingly opted for the former approach, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015);

(k) Based on the circumstances of this litigation, the law of the Seventh Circuit, the nature of the Settlement, and the efforts by Co-Lead Counsel on behalf of the Settlement Class, the Court opts to employ the percentage of the fund method in determining the appropriate amount of an attorney fee award in this case;

(l) Plaintiffs have filed a motion for an award of attorneys' fees in the amount of $13,795,000, which represents 31% of the $44.5 million sum that U.S. Bank agreed to pay through the Settlement, and less than 31.4% of the net benefit accruing to the

Settlement Class—in other words, 31.4% of $43,967,559.12 (which is $44.5 million less (i) the $437,440.88 sum reflecting Co-Lead Counsel's recovery of out-of-pocket expenses, (ii) the combined $45,000 in service awards to the nine customer representatives, and (iii) the $50,000 maximum cost of Settlement notice and administration);

(m) Although the Court finds, as discussed below, that the requested fee award is fully supported without taking into account the additional $18 million paid by U.S. Bank in the CFTC litigation, the Court also notes that with that $18 million payment also taken into account, Co-Lead Counsel is requesting an award substantially lower than 31% of the total benefit derived from the litigation against U.S. Bank for which they are wholly or substantially responsible;

(n) The requested attorney fee award of approximately 31% of the Settlement Amount is at least on par with (and is arguably below) what the market would support;

(o) "A customary contingency fee would range from 33 1/3% to 40% of the amount recovered," *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97-C-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001);

(p) When Plaintiffs' counsel are retained by public entity and corporate clients for litigation services, those contracts typically contain provisions for the payment of contingent fees ranging from 30-40%, and these retention agreements are entered into with sophisticated in-house counsel, indicating that the requested percentage is consistent with market rates, *see Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *Goldsmith v. Tech. Solutions Co.,* 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995);

(q) Fee awards in other class actions in the Seventh Circuit confirm that 31% is at or below what the market would pay for the services rendered, *see Taubenfeld,* 415 F.3d at 599-600; *Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.*, 2004 WL 768658, *1 (S.D. Ill. 2004); *Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006);

(r) The *Synthroid* factors also confirm the propriety of the requested fee award: Co-Lead Counsel undertook numerous and significant risks of nonpayment in connection with the prosecution of this high stakes action, and the benefit achieved for the Settlement Class was obtained only because of Co-Lead Counsel's skillful advocacy over the course of nearly three years of litigation against well-funded and intense opposition from U.S. Bank;

(s) Settlement Class members were advised in the Notice of Settlement, approved by this Court, that Co-Lead Counsel would ask the Court to approve a payment of up to 31% percent of U.S. Bank's $44.5 million payment, plus payment of up to $500,000 for the expenses they have incurred in the prosecution of this action and the payment of service awards;

(t) There were no objections by Settlement Class members to the requested fee award;

(u) Although Seventh Circuit precedent does not require this Court to compute the lodestars of Plaintiffs' counsel, either as a method for computing the fee or as a crosscheck, the Court notes that utilization of the lodestar method would lead to the same conclusion: the requested fee award is reasonable and appropriate;

(v) Plaintiffs' counsel and their professional support staff reasonably expended over 20,000 hours in this action for a lodestar totaling $9,909,060.75 (net of the $312,500 already awarded as part of the JPMorgan settlement) on behalf of the Plaintiffs and Settlement Class, and also incurred $437,440.88 in out of pocket expenses (net of the $351,509.55 already awarded for reimbursement as part of the JPMorgan settlement) in prosecuting this action;

(w) As detailed in the declaration submitted in support of the fee application, a fee award of $13,795,000 would equate to a modest lodestar multiplier of approximately 1.39, which is reasonable in light of the circumstances discussed above;

3. Accordingly, Co-Lead Counsel are hereby awarded attorneys' fees in the amount of $13,795,000—an award the Court deems to be fair and reasonable.

4. Further, Co-Lead Counsel are hereby awarded $437,440.88 out of the Settlement Amount to reimburse them for the expenses they incurred in the prosecution of this lawsuit, which the Court finds to be well-documented, and fairly and reasonably incurred to achieve the benefits to the Settlement Class obtained in the Settlement.

SO ORDERED this 15th day of October, 2015.

_____
The Honorable Sara L. Ellis
United States District Judge